### BOOTH v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 24, 1905.)

#### No. 209.

1. CRIMINAL LAW—REVIEW—ADMISSION OF EVIDENCE.

Error cannot be assigned to the admission of a statement of a witness which was unresponsive, where no objection or motion to strike out was made, because the court had previously refused to rule that no evidence on the subject would be admitted at a time when the question was not directly presented.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 2674.]

2. SAME—OBJECTIONS.

Objections to the admission of evidence, not specified when it was offered, cannot be considered in the appellate court.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1630; vol. 15, Cent. Dig. Criminal Law, § 2653.]

3. FRAUDULENT USE OF MAILS—EVIDENCE.

On the trial of a defendant for using the mails to defraud, where he was charged with having used a letter head purporting to show that he was engaged in a business in which he was not in fact engaged, for the purpose of obtaining property on credit, it was error to admit in evidence against him a letter head of a firm having the same surname, where he was not charged with using such letter heads nor with making any representations respecting his connection with the firm, and also to admit a list, supposed to be of creditors, and unreceipted bills from parties not named in the indictment, all of which were found in defendant's office, there being no evidence to show by whom the list was made, nor whether or not he was in fact indebted to any of the parties, nor how the transactions arose.

In Error to the District Court of the United States for the Western District of New York.

This cause comes here upon writ of error to review a judgment of conviction upon three indictments containing five counts, which indictments were consolidated and tried together. The charges are for violation of section 5480, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3696].

Edward Lynn, for plaintiff in error.
Charles H. Brown, for the United States.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit
Judges.

LACOMBE, Circuit Judge. The section under which indictments were found makes it a crime to place any letter in or take any letter from any post office in the execution or attempted execution of any scheme or artifice to defraud, which scheme or artifice is devised to be effected by opening communication with some other person through the post-office establishment. It will be well to set forth in detail the substance of one of the indictments and of the evidence adduced in its support, in order to show the theory of the prosecution. When that is thoroughly understood, the assignments of error may be more readily disposed of. It is charged that on November 20, 1903, defendant, Booth, placed a letter in the post office directed to the Moline Pump Company at Moline, Ill., which contained an order directing shipment to defendant of a 4 H. P. gasoline engine. This letter was written on a printed letter head, which represented that Booth was engaged in the business of grain threshing and well drilling, of dealing in threshing and well-drilling machinery, of dealing in wrought-iron pipe and casing and well supplies of every description, to be a contractor for water, oil, gas, and artesian wells, prospecting, etc., to be an hydraulic engineer, to do the business of making complete water supply installations, and to make a specialty of torpedoing wells. It is charged that this pretense of being engaged in such businesses was a scheme or artifice to induce the persons receiving letters written under such letter heads to sell on credit and send to him various articles which could and naturally would be used in some of said businesses in which he so pretended to be engaged, he not intending to use said articles so received, or any thereof, in any of said businesses, and not being engaged in such businesses, or any of them, not intending to pay for the same, but intending to sell the said articles, and all thereof, as soon as he should receive the same from said various persons, for such amounts as he could obtain therefor, and fraudulently to convert the moneys received from such sales to his own use, and thereby to defraud the several persons who should send the articles to him. A second count charged the mailing of a similar letter on December 19, 1903, ordering a 6 H. P. gasoline engine. The proof showed that both these engines were sent to defendant, the price being $390; that he never paid for them, but on January 29, 1904, sold them both for $175. When sued for the price, he put in an answer denying that the agreed price was $390, or that they were worth so much, and averring that they were not of the horse power represented. So far as appears, he never made any complaint of the engines until his answer was interposed. Judgment was entered against him for the full amount, but never satisfied. There was evidence tending to show that he was not at the time engaged in the business represented by the letter heads, and admissions of the

defendant were testified to, which, if true, indicated the existence of the scheme charged. Another indictment charged (in two counts) that on January 30, 1904, and February 19, 1904, he mailed letters to the Titusville Oil Works at Titusville, Pa., requesting the shipment of some gasoline. The evidence showed that the gasoline was sold and sent him at the agreed price of 11¼ cents a gallon, and sold by him shortly after its receipt for 9 cents a gallon. He never paid for it. Other indictments charged similar performances. It will not be necessary to recite them. Sufficient has been shown to indicate what issues were before the trial court.

In some of the transactions included in the indictments defendant used a different letter head, representing that he was engaged in the business of dealing in "boots and shoes, machinery, light and heavy hardware, pipe, contractor's materials, etc., agricultural implements, binder twine, wagons and buggies, harness, furniture, gasoline and steam engines and boilers, automobiles, bicycles and motor cycles, musical instruments," etc.

Only such assignments of error as are argued on the brief will be here discussed.

1. It is contended that the testimony of the witness Hayden regarding defendant's alleged statement "that he sold shingles for half what they cost" was not relevant, and was prejudicial to defendant. No exception to the admission of this testimony was reserved. Hayden was the chief of police, who was testifying to certain damaging admissions which he said defendant had made to him. He testified on the direct that defendant told him that the people he sold the goods to made more profit than he did, and that in answer to a question where he sold any goods that he got he had said that he sold some shingles down near Canandaigua. So far this was received without objection, but immediately upon the last answer defendant's counsel objected "to anything further in relation to the shingles." The court overruled the objection, and exception was reserved, but no further question as to the shingles was put to the witness on the direct. After a long direct examination he was subjected to an extended cross-examination in the course of which he stated that defendant gave as a reason why he was buying and selling different things that he was in debt, and was trying to get out of debt. Upon redirect the District Attorney put this single question: "Q. Counsel asked if the defendant said to you that he was in debt, and trying to get out of debt, and that was the reason he was dealing in this way. Now, did you understand this question?" This was a perfectly proper question, and was not objected to. In the course of his answer witness made the statement now complained of, viz., that defendant told him he sold a carload of shingles for half what they cost him. This was irresponsive to the question, but no objection was made to it, nor was any motion made to strike it out, nor any exception reserved. It would be unfair to the court to consider whether it was error or not to admit this particular statement about the shingles merely because an hour or so before the court refused to rule that it would exclude all further testimony about them, such ruling being made

at a time when no particular question indicating what was sought to be elicited was before the court for determination.

2. It is contended that the testimony of the witnesses Jones, Tackey, and Day in relation to letters received was incompetent, and the admission of such letters improper. It is difficult from the brief to make out what precisely is the point relied upon. Turning to the assignment of error bearing on Jones' testimony, we find that error is assigned in admitting the testimony of Jones that "he took out of the post-office box of the Boston Piano & Organ Company at Coshocton, Ohio, a letter addressed to Boston Piano & Organ Company, and signed 'F. A. Booth'; that the envelope was postmarked Rochester, N. Y.; that it was stamped with the post-office stamp in the regular way; that the stamp consisted of black marks." Turning to the record, we find that the witness produced the letter referred to, and testified that it was taken by him from the post-office box of the piano company, inclosed in an envelope; that (for reasons which he explained) he examined the envelope carefully, and, after taking the letter out, destroyed the envelope. The objections interposed were that the testimony was "not the best evidence, improper, incompetent, no evidence that it was ever deposited in the mail by defendant, no evidence that any post-office department had ever placed any postmark upon the letter." They were overruled, and exception reserved. Of course, additional evidence would be required to warrant a finding that the defendant deposited the letter in the mail, but it is difficult to understand upon what theory it could be held that the letter was not admissible, nor why the witness should not be allowed to describe the appearance and state the contents of a document (the envelope) which was lost or destroyed. The brief discloses no sound reason for the exclusion of this testimony, or of the testimony as to other letters and envelopes referred to under this point.

3. It is contended that the reception in evidence of the judgment roll in the action of Moline Pump Company against F. A. Booth was immaterial to the issue, and was improper, in that it was a violation of the fifth amendment of the Constitution of the United States and section 860, Rev. St. U. S. [U. S. Comp. St. 1901, p. 661]. Reference to the statement of facts, supra, will sufficiently indicate the materiality of the testimony. The other objections were not interposed when the proof was offered and admitted, the only exception reserved being "as immaterial, incompetent, improper." Other objections not then reserved cannot now be considered. An objection based on the Constitution and on a provision of the Code of Civil Procedure of the state of New York protecting persons from having testimony given by them upon supplementary proceedings used against them in a criminal proceeding was interposed to a question put to the lawyer who had entered the judgment referred to. It is of no moment, because no evidence was given or offered of any testimony elicited upon supplementary proceeding. All that was shown was that Booth had been examined in such a proceeding, and that the judgment was still unsatisfied.

4. It is contended that it was error to admit a letter head of a

firm known as "Booth Bros.," which had been in business for many years at Rochester, N. Y., the place named in defendant's letter heads. The Booth Bros. letter head reads: "Booth Bros., Shoe Machinery Manufacturers. Beading Machines a Specialty." We are unable to discover how this piece of evidence was in any way relevant or material towards establishing the issue that defendant had (by the use of his letter heads) pretended that he was engaged in a variety of businesses, when in fact he was not so engaged. It was manifestly error to admit it under the pleadings. And we cannot satisfy ourselves that such error was not prejudicial to defendant. The Booth Bros. heading had a tendency, however slight, to indicate an intention on defendant's part so to devise his letter head as to induce a person reading it to think that he was in some way connected with a concern bearing the same name "Booth," and engaged in the shoe machinery business in Rochester; which concern, as the evidence showed, had a good rating in Dun's Commercial Register. But no such fraudulent intent was charged against him in the indictment, and he came into court to try no such issue. Evidence tending to establish a different sort of fraud from that charged in the indictment was immaterial, and should have been excluded.

We think also that it was error to admit in evidence, apparently solely because it was found in defendant's office, a long typewritten list of names of firms and individuals, with amounts following their names, the list being headed with the word "Firms who want their money" written in pencil, and not shown to be in the handwriting of defendant. In the absence of any proof of handwriting, it could not be received as an admission of defendant; nor was it in any sense proof of the ordering or of the receipt of goods, or of their resale, or of failure to pay for the same. A like exception (incompetent and immaterial), which was reserved to nine packages of papers, not printed in the record, but said to contain bills and accounts, not receipted, from many dealers throughout the United States, is well taken. Presumably they were offered to show that defendant had ordered and obtained several thousand dollars worth of merchandise which he had not paid for; but they were not competent evidence to prove such fact. If the government thought it at all important to strengthen its case by showing that, in addition to the instances covered by the indictments, defendant had on many other occasions obtained and disposed of goods in the same way without paying for them, it might have established that fact by proof similar to that already introduced in the case of the Moline Machine Company, the piano company, and the oil company. The error must have been prejudicial to defendant. It must have helped to induce a belief in the jury's mind that defendant had carried on the same scheme in scores of instances, to the extent of thousands of dollars. Indeed, it is one of the assignments of error that in his summing up the District Attorney, holding the typewritten list in his hand, said to the jury, "If the defendant had paid any of these people, why had he not scratched their names from this list?"

Inasmuch as these errors in the admission of evidence require a

reversal it is unnecessary to consider any errors assigned for refusals to charge as requested. Defendant's counsel submits the point that the proof does not correspond to the facts set forth in the indictments, for the reason that all the acts specified in the indicments were committed at Stanley, N. Y., while the proof shows that at the time the acts were alleged to have been committed the defendant resided in Rochester, N. Y. What defendant's residence has to do with the offense charged we are wholly at a loss to conceive. The brief presents neither argument nor authority to support this point.

The judgment is reversed, and cause remanded for a new trial.