DYAR et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. April 4, 1911.)

No. 2,100.

1. INDICTMENT AND INFORMATION (§ 93*)—SUFFICIENCY.

An indictment will not be held insufficient on an objection first made after going to trial, on the ground that the facts were stated more by way of recital than directly; all the elements of the offense being set out.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 266; Dec. Dig. § 93.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. INDICTMENT AND INFORMATION (§ 196*)—USING MAILS TO DEFRAUD—INDICTMENT—SUFFICIENCY.

As against objection to testimony or motion in arrest, an indictment for using the mails to defraud sufficiently charged that a letter was intended to be sent or delivered by the post office department, where it stated that accused deposited and caused to be deposited in a particular post office a certain envelope, duly stamped and sealed, and addressed to certain persons.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 628–635; Dec. Dig. § 196.*

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79.]

3. CRIMINAL LAW (§ 369*)—EVIDENCE OF OTHER OFFENSES—ADMISSIBILITY.

In a trial for using the mails to defraud, it was error to admit evidence of one of the defendant's conviction of other offenses, where his character was not put in issue.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. § 369.*]

4. FINES (§ 17½*)—ABATEMENT—DEATH OF ACCUSED.

A fine for an offense abated with accused's death, especially where the judgment was reversed for error, entitling his estate to a fund deposited to secure its payment.

[Ed. Note.—For other cases, see Fines, Dec. Dig. § 17½.*]

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Alexander S. Dyar and another were convicted of fraud, and they bring error. Reversed and remanded for new trial.

Benj. Rice Forman, Chandler C. Luzenberg, .i W. Knox Haynes, for plaintiffs in error.

W. J. Waguespack and Charlton R. Beattie, for the United States.

Before McCORMICK and SHELBY, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge. Plaintiffs in error, Alexander S. Dyar and W. H. Hale, were convicted in the Circuit Court of the United States for the Eastern District of Louisiana under an indictment for violation of section 5480, Revised Statutes of the United States, as amended by the act of March 2, 1889 (25 Stat. 273, c. 393 [U. S. Comp. St. 1901, p. 3696]), although the second count in the indictment charged a conspiracy between Dyar and Hale to commit the offense named in section 5480.

The first indictment, No. 2,576, charged that A. S. Dyar and W. H. Hale did knowingly, willfully, unlawfully, and feloniously devise a scheme and artifice to defraud; that is to say, by divers false pretenses and representations to obtain and acquire for themselves of and from one Simon Vercher, of Bayou Current, state of Louisiana, and from each of various other persons to the grand jurors unknown, a large sum of money, to wit, $100, and to convert and appropriate said sums of money to the use and benefit of themselves, without giving or rendering an equivalent therefor, the said scheme

and artifice to defraud to be effected by inducing and enticing said Simon Vercher and the various other persons to the grand jurors unknown to open communication by means of the post office establishment of the United States with them, the said Dyar and Hale, and by opening communication by means of the post office establishment of the United States with the said Simon Vercher and the said various other persons to the grand jurors unknown which said use and misuse of the post office establishment of the United States was then and there part of the said scheme and artifice to defraud by falsely pretending in and through certain advertisements, letters, and circulars sent and to be sent through and by the mails of the United States that they, the said Dyar and Hale, were physicians of eminence, and skilled specialists in the treatment of various diseases, and were able to effect a complete cure of certain diseases commonly known and supposed to be incurable, and that the said Hale was one of the greatest living specialists in nervous, chronic, and special diseases; that he was of London, England, and a noted expert in genito-urinary diseases, and would only consent to grant a consultation to the said Simon Vercher, and the various other persons to the grand jurors unknown, by reason of his personal friendship for the said Dyar, and that a visit to said Dyar and Hale and a consultation with the said Hale would be of great benefit to the said Simon Vercher, and the various other persons to the grand jurors unknown, and that the said Hale would give the said Simon Vercher and others a consultation and all necessary advice, free of charge, whereas, in truth and in fact, the said Dyar and Hale well knew they were neither of them physicians of eminence nor skilled specialists in the treatment of various diseases; they were not able to effect a complete cure of certain diseases commonly known and supposed to be incurable, and that said Hale was not of London, England, and on a visit to the United States; he was not a noted expert in genito-urinary diseases; was not regarded as one of the greatest living specialists in nervous, chronic, and special diseases, and had not consented to grant a consultation to the said Simon Vercher and the others because of his personal friendship for the said Dyar, and did not intend to, and would not, give a consultation and all necessary advice to the said Simon Vercher and others free of charge, but, on the contrary, by means of said false and fraudulent pretenses and representations the said Dyar and Hale did knowingly, willfully, unlawfully, and feloniously intend to obtain the aforesaid sums of money, to wit, $100 each from the said Simon Vercher and the other persons to the grand jurors unknown, and to knowingly, willfully, unlawfully, and feloniously convert the same to their own use and benefit.

It is further charged that the said Dyar and Hale did deposit in the post office establishment of the United States, in the post office at New Orleans, state of Louisiana, a certain envelope, duly stamped and sealed, and addressed to Simon Vercher, Atchafalaya, La., which said envelope was intended to be, and was, delivered to the said Simon Vercher, at Atchafalaya, state of Louisiana, and contained a certain letter which was set out as follows:

"[Photograph of Dr. A. S. Dyar, marked 'Dr. A. S. Dyar, Principal of the Staff of Physicians and Surgeons of A. S. Dyar.']

"Dr. A. S. Dyar.

"Physician, Surgeon and Specialist.

"Office and Laboratory, No. 619 Canal Street.

"(Corner Exchange Place.)

"Office Hours: Daily and Sunday from 9 A. M. to 8 P. M.

"Private Office: No. 110 Exchange Place.

"New Orleans, February 27th, 1908.

"Mr. Simon Vircher, Atchafalaya, La.—Dear Sir: I hope that you will pardon this letter, but when you have read it I know you will. It is natural that I feel a deep interest in those consulting me regarding their physical condition and especially in those I have treated and also in those I am still treating. I feel that you know that I have been perfectly sincere and honest in everything I have done and said, that I have always studied your case carefully, and earnestly endeavored to deserve your confidence and friendship—in other words I have tried to act out the Golden Rule.

"The fear that I have not cured you has been causing me some worry. Meeting Professor W. H. Hale, M. D., of London, England, the noted expert in genito-urinary diseases, who is just now on a visit to the United States, and with whom some years ago I had a very close acquaintance, I took the liberty of consulting this noted gentleman about your case. He gave me much light and assured me that there was a safe and permanent cure for your trouble.

"So delighted was I, that I have, after much pursuasion, secured Professor Hale's promise to spend next Thursday, Friday, Saturday and Sunday, March 5th, 6th, 7th and 8th, with me, on which occasion he will meet you, give you a consultation and whatever advice is necessary, for which there will be no charge whatever to you.

"When you stop to think that, as a rule, Professor Hale charges from $100 to $1000 for consultation alone, you can possibly understand what it means to you to get the benefit of his valuable services without any charge whatever, and because of his personal friendship for me he has consented to see a limited number of my patients, of whom you are one.

"Professor Hale is regarded as one of the greatest living specialists in nervous, chronic and special diseases. I therefore ask you to call at my office on either of the days mentioned: namely, Thursday, Friday, Saturday or Sunday, March 5th, 6th, 7th and 8th, at any hour that suits your convenience between 9 a. m. and 8 p. m., as the doctor will be with me each day during those hours.

"I can hardly express to you the pleasure and satisfaction I experience in having Professor Hale visit me, and I hope that you will avail yourself of my efforts in your behalf.

"Yours in the Cause of Health, A. D. Dyar, M. D."

Later, on the 25th day of May, 1910, another indictment was obtained against Dyar and Hale, the first count in which set out that Dyar and Hale devised a scheme to defraud one Joseph C. Burke and various other persons to the grand jurors unknown, and then set out at some length what substantially was a scheme to write to Burke and others that Dyar regretted that he had been unable to effect a cure in their cases before, but that he had interested Professor W. H. Hale, a noted specialist in nervous, chronic, and special diseases, of London, England, and that Hale was a noted expert in genito-urinary diseases, and was just then on a visit to the United States, and him Dyar had consulted about the cases of Burke and others to the grand jurors unknown, and after much pursuasion had induced

Hale to give a consultation, free of charge, to Burke and the other persons, and Hale had consented to see a limited number of his, Dyar's patients, that Hale usually charged for such services from $100 to $1,000, and that the said Dyar and Hale did unlawfully and feloniously intend to obtain from the said Burke and various other persons to the grand jurors unknown the sum of $300 each, and to knowingly, willfully, unlawfully, and feloniously convert the same to their own use, without then and there intending to render therefor either to the said Burke or any of the various other persons to the grand jurors unknown advice, service, or other consideration of the kind, character, quality, and value that the false and fraudulent pretenses, representations, and inducements were calculated and intended by Dyar and Hale to lead the said Burke and others to believe that they would receive; that is the services, and the cure resulting therefrom, of truly eminent physicians and specialists.

Copy of letter written by Dyar to Burke is set out in the indictment. It is then charged that with a view to executing and in the execution of the scheme and artifice to defraud, through and by means of the post office establishment of the United States, Dyar and Hale did deposit and cause to be deposited in the post office of the United States at the city of New Orleans, state of Louisiana, a certain envelope, duly stamped and sealed, and addressed to Joseph C. Burke, and each of the various other persons to the grand jurors unknown, and containing the letter which is set out in the indictment.

The second count charges conspiracy, under section 5440, Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3676), to commit the offense named in section 5480, and, after the charge of unlawful conspiracy, confederation, and agreement, sets out substantially what is set out in the first count in the indictment. The case made by these indictments coming on for trial, the cases were consolidated and were afterwards tried together; the result being that the verdict of guilty was rendered against both defendants. A number of exceptions were taken in the court below, which are now presented by the record here.

[1] The first exception is to the sufficiency of the indictments. There was no demurrer to either of the indictments, and they were only attacked by objections to the admission of testimony during the trial and subsequently by a motion in arrest of judgment. The objection to the indictment was not, and could not very well be, placed upon the ground that the indictment failed in its entirety to set out an offense against the defendants under section 5480 and a conspiracy under section 5440 to commit the offense under the former section. The objections made during the trial to the introduction of evidence upon the ground of the insufficiency of the indictments, while they state in general terms that the indictments failed to set out an offense under the statute, we judge the real objection to be more upon the ground that the facts necessary to constitute the offense were stated more by way of recital than a direct charge in the charging part of the indictment. Whatever might have been the merit of this exception to the sufficiency of the indictment, if it had been made in proper time, by demurrer or motion to quash, we think it

came too late after defendants had pleaded not guilty and gone to trial, or, after trial, by motion in arrest of judgment. The only just criticism of these indictments was merely in matter of form, because it is clear that all the elements of the offenses were set out considering the indictments as a whole. That this objection came too late is settled, we think, by the decision of the Supreme Court in Dunbar v. United States, 156 U. S. 185, 15 Sup. Ct. 325, 39 L. Ed. 390. In one of the headnotes of that case it is said:

"A defendant who waits till after verdict before making objection to the sufficiency of the indictment waives all objections which run to the mere form in which the various elements of the crime are stated, or to the fact that the indictment is inartificially drawn."

In the body of the opinion, by Mr. Justice Brewer, it is said:

"Further, no objection was made to the sufficiency of the indictments by demurrer, motion to quash, or in any other manner until after the verdict. While it may be true that a defendant by waiting until that time does not waive the objection that some substantial element of the crime is omitted, yet he does waive all objections which run to the mere form in which the various elements of the crime are stated, or to the fact that the indictment is artificially drawn. If, for instance, the description of the property does not so clearly identify it as to enable him to prepare his defense, he should raise the question by some preliminary motion, or perhaps by a demand for a bill of particulars; otherwise it may properly be assumed as against him that he is fully informed of the precise property in respect to which he is charged to have violated the law. In this connection, also, reference may be made to section 1025, Revised Statutes [U. S. Comp. St. 1901, p. 720], which provides that 'no indictment * * * shall be deemed insufficient * * * by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant.' This, of course, is not to be construed as permitting the omission of any matter of substance (United States v. Carll, 105 U. S. 611 [26 L. Ed. 1135]), but is applicable where the only defect complained of is that some element of the offense is stated loosely and without technical accuracy."

While in the above case a verdict had been rendered and objection was made by motion in arrest, we think the rule applies where there is no demurrer or motion to quash and the sufficiency of the indictment is questioned by objections to the introduction of testimony on the trial.

In Nurnberger v. United States, 156 Fed. 721, 725, 84 C. C. A. 377, 381, decided by the Circuit Court of Appeals for the Eighth Circuit, it is said in the opinion:

"The defendant did not, either by motion to quash or demurrer, invite the court's attention to any defect in the indictment; but on the trial objected to the introduction of any evidence by the Government because of the claimed defects. This practice is not recognized in criminal procedure. United States v. Harmon (D. C.) 45 Fed. 414."

If the indictments wholly failed to state an offense or a substantial element of the crime charged, the rule would be different. Dunbar v. United States, supra.

[2] Another objection to the indictment is that it failed to charge in sufficient terms that the letter was intended "to be sent or delivered by the Post Office Department." The language of the indictment on this subject shown in the synopsis of the indictments as stated above is:

"The said A. S. Dyar and the said W. H. Hale did knowingly, willfully, unlawfully, and feloniously and with a view of executing and in the execu-

tion of said scheme and artifice to defraud through and by means of the post office establishment of the United States deposit and cause to be deposited in the post office of the United States, at the city of New Orleans, state of Louisiana, a certain envelope, duly stamped and sealed, and addressed to each of the various other persons to the grand jurors unknown, in the words and figures identical, with the exception of the addresses, with the words and figures of the letter just recited in full, and adressed and mailed to the said Joseph C. Burke."

We think this charge in the indictment sufficient as against exception to the same made by objection to testimony or by motion in arrest. It clearly put the defendant on notice as to the charge that as a part of the offense he mailed a letter to Vercher and Burke and others unknown to the grand jurors, necessarily intending to say thereby that the same was to be delivered by mail.

[3] The next and the most important exception taken by the defendants was to the action of the court on the trial in admitting. evidence of the conviction of Hale of certain offenses before the communications and transactions referred to in the indictment in this case. The government was allowed to prove, over objection, that the defendant W. H. Hale had been convicted in the United States District Court in Colorado and served a sentence of 18 months in the Illinois Penitentiary at Joliet, and the government was also allowed to put in evidence the entire record of conviction. The government was further allowed to prove that Hale was a prisoner, serving a term in the New York County Penitentiary, and was also allowed to place in evidence a certified copy of the indictment and minute of conviction of the Court of General Sessions of the Peace in the case of the People of the State of New York v. William H. Hale. The government was also allowed to prove by one E. L. Kincaid that he found Hale in New York going under the name of Dr. B. L. Kirk, and that he told Hale that he had seen records from the police headquarters where Hale had been in jail in Liverpool, England, and, further, that he had police records showing that Hale had been in the penitentiary at Joliet, Ill., and in the penitentiary in New York and in jail in Liverpool, England; all of this over objections, and all of which the defendant moved the court to exclude, which motion was denied. As the defense had not put Hale's character in issue, we think that this was manifest error, both against Dyar and Hale. The evidence was admitted by the court, as we understand from the record; for the purpose of showing the intent with which the letters named in the indictment were sent out. The authorities upon this question are numerous, and all, we think, which bear directly upon the question, to the same effect. In Wigmore on Evidence, § 192, it is said:

"This principle has long been accepted in our law. That 'the doing of one act is in itself no evidence that the same or a like act was again done by the same person' has been so often judicially repeated that it is a commonplace."

One of the leading cases on the subject of the admission of such testimony is State v. La Page, 57 N. H. 245, 24 Am. Rep. 69. In that case the controlling legal propositions are stated in the opinion of Cushing, C. J., on page 289 of 57 N. H., as follows:

"(1) It is not permitted to the prosecution to attack the character of the prisoner, unless he first puts that in issue by offering evidence of his good character. (2) It is not permitted to show the defendant's bad character by showing particular acts. (3) It is not permitted to show in the prisoner a tendency or disposition to commit a crime with which he is charged. (4) It is not permitted to give in evidence other crimes of the prisoner, unless they are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing on the issue on trial other than such as is expressed in the foregoing three propositions."

In the same case, on page 290 of 57 N. H., there is a quotation from Wharton's American Criminal Law, as follows:

"It is here, however, that the fundamental distinction begins, for, while particular acts may be proved to show malice or scienter, it is inadmissible to prove either in this or any other way that the defendant had a tendency to the crime charged. Thus in England it has been held that upon the trial of a person charged with an unnatural crime it was not permitted to prove that the defendant had admitted that he had a tendency to such practices."

And again, on page 291 of 57 N. H., the court quotes with approval from Lord Campbell, in Regina v. Oddy, 2 Den. Cr. C. 264, as follows:

"I am of the opinion that the evidence objected to was as admissible under the first two counts as it was under the third, for it was evidence which went to show that the prisoner was a very bad man and a likely person to commit such offenses as those charged in the indictment. But the law of England does not allow one crime to be proved in order to raise a probability that another crime has been committed by the perpetrator of the first. Evidence which was received in the case does not tend to show that the prisoner knew that these particular goods were stolen at the time he received them. The rule which has prevailed in the case of indictments for uttering forged bank notes of allowing evidence to be given of the uttering of other forged notes to different persons has gone great lengths, and I should be unwilling to see that rule applied generally in the administration of the criminal law. We are all of the opinion that the evidence admitted in this case with regard to the scienter was improperly admitted, as it afforded no ground for any legitimate inference in respect of it. The conviction therefore must be quashed."

In Kansas v. Adams, 20 Kan. 311, in the opinion of Mr. Justice Brewer, it is said:

"The rule of law applicable to questions of this kind is well settled. It is clear that the commission of one offense cannot be proved on the trial of a party for another merely for the purpose of inducing the jury to believe that he is guilty of the latter, because he committed the former. You cannot prejudice a defendant before a jury by proof of general bad character, or particular acts of crime other than the one for which he is being tried."

In Commonwealth v. Jackson, 132 Mass. 16, the syllabus pertinent to this question is as follows:

"At the trial of an indictment, under the Gen. Sts. c. 161, § 54, for obtaining the property of another by false pretenses in the sale of a horse, evidence of similar pretenses made by the defendant in sales to other persons a short time previously to the sale in question is inadmissible for the purpose of showing the intent with which the defendant made the sale of the horse."

In State v. Saunders, 14 Or. 300, 12 Pac. 441, in the opinion by Thayer, J., this is said:

"Place a person on trial upon a criminal charge, and allow the prosecution to show by him that he has before been implicated in similar affairs (no

matter what explanation of them he attempts to make), it will be more damaging evidence against him and conduce more to his conviction than direct testimony of his guilt in the particular case. Every lawyer who has had any particular experience in criminal trials knows this—knows that juries are inclined to act from impulse, and to convict parties accused, upon general principles. An ordinary juror is not liable to care about a party's guilt or innocence in the particular case, if they think him a scapegrace or vagabond. That is human nature."

See, also, Booth v. United States, 139 Fed. 252, 71 C. C. A. 378; People, etc., v. Molineux, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193. The whole subject is thoroughly discussed in 1 Wigmore on Evidence, § 192 et seq., and the authorities fully cited.

Of course, there are many instances in which evidence of the commission of other offenses is necessarily admissible. One instance often referred to in the books is where the commission of one offense is a circumstance tending to show the commission of the offense for which the defendant is on trial. The fact that the defendant charged with homicide stole an axe or a gun with which the killing was done, the stealing of the weapon, though a distinct offense, would necessarily be in the very nature of the case competent evidence against him on his trial for homicide. The passing of other counterfeit money of the same character as that which the defendant is charged with passing in the case on trial would be admissible to show guilty knowledge or intent. Many other instances might be cited which are exceptions to the general rule. One of the former convictions of the defendant which was put in evidence was 14 years before this offense is alleged to have been committed. We think the admission of these former convictions and former imprisonments in the penitentiary was error as against Hale, and also very clearly error as against Dyar.

Judgment must be reversed and the case remanded, with directions to grant a new trial.

The United States attorney has brought to the attention of this court the fact that a fine of $1,000 was imposed on A. S. Dyar as a part of the penalty in this case. Thereafter Dyar desiring to dispose of certain real estate in the city of New Orleans, and the fact of this fine standing against him prevented him from getting a clerk's certificate that his property was free from incumbrance, the matter was brought to the attention of the Circuit Court by Dyar, and the United States attorney was directed to show cause why he should not be permitted to deposit in the registry of the court the sum of $1,000, without prejudice to his writ of error, and to be returned to him if the sentence and judgment be reversed.

After hearing, the court made the following order:

"Whereupon and on due consideration thereof, and the law and evidence being in favor of plaintiff in rule and against defendant in rule, it is ordered, adjudged. and decreed that the defendant, Alexander S. Dyar, be permitted to deposit in the registry of the court the sum of one thousand ($1,000.00) dollars as the fine which he was condemned and sentenced to pay on the 10th day of June, 1910, in this cause, without prejudice to his writ of error which he has obtained and which has been allowed, said amount to be returned to him in case his said judgment is reversed, and it is further ordered, upon said amount being deposited in the registry of the court, that Henry J. Carter, clerk, do issue to him a clear certificate that there is no judgment

of this court operating as a lien or judicial mortgage on his property, any ultimate rights which the United States may have in this case to attach to the said one thousand ($1,000.00) dollars so deposited."

The sum of $1,000 was deposited in the registry of the court in pursuance of the above order, and has since remained there.

It is further represented to this court by the United States attorney that since the judgment of the court in this case, and since the above order allowing Dyar to make the deposit as stated, Dyar has died, and this court is asked to give some direction as to the disposition of the $1,000 so deposited. We are of the opinion that the penalty abated with the death of the defendant. This would be true whether the judgment here had been reversed or affirmed. The judgment being reversed certainly strengthens this view of the matter.

In the case of United States v. Pomeroy (C. C.) 152 Fed. 279, Judge Holt in the United States Circuit Court for the Southern District of New York had a similar question before him, and he took the view of it which we have indicated above.

In concluding his opinion in that case, Judge Holt said:

"In this case the defendant was fined $6,000. That money was not awarded as compensation to the United States. No harm has been done to the United States. It was imposed as a punishment of the defendant for his offense. If while he lived it had been collected, he would have been punished by the deprivation of that amount of his estate; but upon his death there is no justice in punishing his family for his offense. It may be said, of course, that there is very little difference between the loss which his family would have sustained if the money had been collected before his death and the loss of which it will now sustain if it is collected from his estate. But, if the money had been collected before his death, he would have been punished. If it is collected now, his family will be punished, and he will not be punished. In my opinion, therefore, this prosecution should be deemed ended and this judgment abated by the defendant's death.

"I have some doubt whether this court should make an order declaring the judgment and the proceedings abated, or whether it should leave the matter to be determined in some other court if an attempt should be made to collect the judgment. But it is certainly just to the representatives of the estate that the question should be determined, and I think it may as properly be determined by the court which rendered the judgment as by some other tribunal. The government has had notice of this motion, and has been heard upon it, and in my opinion this court has power to declare that all the proceedings in this case and the judgment entered therein against the defendant were abated by his death.

"My conclusion is that an order should be entered declaring that the proceedings and the judgment have abated, and are no longer of any validity."

The foregoing from the opinion of Judge Holt expresses very clearly the view we have as to what should be done in the present case. Perhaps it might be more properly determined by the Circuit Court after the mandate of this court is returned; but, inasmuch as the United States attorney has asked our consideration of the matter, we express the foregoing opinion. The $1,000 we think should be paid over at once to the proper representative of Dyar's estate.