## TALIAFERRO v. UNITED STATES.

### (Circuit Court of Appeals, Fifth Circuit. March 10, 1914.)

### No. 2481.

CRIMINAL LAW (§ 369*)—EVIDENCE—OTHER OFFENSES.

In a prosecution for carrying on the business of a malt retail liquor dealer without having paid the special tax therefor, it was error to permit evidence that defendant at the time of the alleged offense was also engaged in keeping a bawdyhouse.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. § 369.*]

In Error to the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Mary Taliaferro was convicted of carrying on the business of a malt retail liquor dealer without having paid the special government tax therefor, and she brings error. Reversed.

Mike E. Smith and Theodore Mack, both of Ft. Worth, Tex., for plaintiff in error.

Wm. H. Atwell, U. S. Atty., of Dallas, Tex.

Before PARDEE and SHELBY, Circuit Judges, and NEWMAN, District Judge.

SHELBY, Circuit Judge. The defendant (plaintiff in error here) was indicted in two counts. The first charged that she carried on the business of "a retail liquor dealer" without having paid the special tax therefor; the second that she did engage in and carry on the business of "a malt retail liquor dealer" without first having paid the special tax therefor. The jury found her not guilty on the first count, and guilty on the second count; that is, they found that she was guilty of unlawfully carrying on the business of "a malt retail liquor dealer." The court entered judgment on the verdict and sentenced her to imprisonment in the state penitentiary at Columbus, Ohio, for the period of 18 months.

The evidence, without conflict, showed that, for some time before the finding of the indictment, the defendant lived at 115½ Main street, Ft. Worth, Tex.; that she had rooms for rent, kept boarders, and had a hotel sign in front of the place. The defendant's hotel or rooms were upstairs, and on the ground floor under her rooms there was a licensed saloon where liquors were sold. The boarders or inmates of defendant's rooms often ordered drinks from the saloon, which were carried from the saloon to the defendant's place by a porter of the saloon. Several witnesses for the government testified that the defendant kept and sold spirituous and malt liquors in her hotel or rooms. This evidence, if believed by the jury, was sufficient to sustain a verdict of guilty, for she had not paid the special tax. The defendant, as a witness for herself, testified that she never made any sales of spirituous or malt liquors, and that the drinks purchased by her board-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ers were purchased at the saloon under her rooms. In this she was sustained by several witnesses—her chambermaid, cook, and others. In brief, there was a sharp conflict of evidence on the question as to whether or not she was engaged in the business as charged. If the jury had believed the evidence she offered, they would have been justified in finding a verdict of not guilty on both counts. The following is an excerpt from the bill of exceptions:

"The district attorney propounded to said witness the following question: 'Q. Was that (referring to the house occupied by the defendant) a questionable house, a resort for men?' To which question and answer thereto attorney for defendant objected, because the question sought to elicit an answer tending to show that the house occupied by the defendant was a house of ill fame, which was collateral, irrelevant and immaterial to any issue involved in the case against the defendant, charging her with engaging in the business of selling intoxicating liquors without a license, and was calculated to prejudice the minds of the jury against her, which objections the court overruled, and said witness was permitted to testify in answer to questions then put by the court as follows:

"Q. Was that a house of disreputable character?

"A. I don't know, Judge; I don't know about that.

"Q. Did it have a general reputation?

"A. It had a reputation, I reckon.

"Q. Did it—do you know what its reputation was? Was it a place—a house of bad repute, if you know?

"A. What do you call a bad house?

"Q. Don't you know?

"A. I never had nothing to do with it.

"Q. I am not asking you that; I am asking you whether or not the reputation of that house was bad, and whether you know or not it was bad?

"A. Well, it had a reputation, I guess, of what you call a bad house.

"Q. A house of ill fame?

"A. Yes, sir.

"To which action of the court in overruling said objections and permitting said witness to testify as hereinbefore set out, the defendant then and there in open court duly excepted."

The following excerpt from the charge to the jury is evidently a reference to the evidence quoted:

"Further, in weighing the testimony adduced here, you gentlemen cannot separate it from the atmosphere of this case, an atmosphere of low men and women in the prosecution of an unlawful calling—a calling which men, even the enforcers of the law in their uniforms, sometimes see nothing of it as it goes on. They wink at the wickedness of men and women. That is the atmosphere of this case, and it is your duty to reach, from the testimony of the witnesses who have appeared, out of that atmosphere and in this courtroom, * * * the very truth."

The question raised by the defendant's plea of "not guilty" was whether or not she was engaged in the business of a retail liquor dealer, or a retail malt liquor dealer, as charged in the indictment. If she was, she was guilty, whether she sold to moral or to immoral people. The reputation of her house as one of ill fame, if it had such reputation, was wholly immaterial. Commonwealth v. Eagan, 151 Mass. 45, 23 N. E. 494. She could not carry on the business in question without violating the law, even if her rooms were used only for strictly moral purposes; and, if they were used for immoral purposes, still she could not, on that account, be convicted of the offense charged,

without the necessary proof that she carried on the business in question. Keeping a bawdyhouse—a house of ill fame—is a criminal offense, one involving moral turpitude. Whether or not the defendant was guilty of that offense is immaterial on the question as to whether or not she was a retail liquor dealer without license. Ballowe v. Commonwealth (Ky.) 44 S. W. 646. Ordinarily, when a defendant is being tried for one offense, it is not permissible to prove the commission of another for the purpose of securing a conviction of the first. It is easy to see how such evidence may prejudice the jury against the defendant—may, in fact, lead to her conviction of the offense with which she stands charged, because the jury may believe that she, at least, is guilty of the other offense. Especially in a case where the evidence is conflicting, as in the instant case, the defendant should not have the burden of defending against a separate charge, introduced in evidence, for which she is not indicted, and which has no tendency to legally prove the specific charge for which she is on trial. In brief, the law does not allow one crime to be proved in order to raise a probability that another has been committed. Dyar v. United States, 186 Fed. 614, 621, 108 C. C. A. 478, and cases there cited.

We are of the opinion that it was error to receive evidence that the defendant was the keeper of a house of ill fame—a bawdyhouse—when she was on trial for selling liquor without having paid the special tax.

Reversed.