**William Raymond LINDSEY,
Appellant,**

v.

**UNITED STATES of America
Appellee.**

**No. 15378.**

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1955.

Ernest E. Roberts, Roberts & Strickland, Miami, Fla., for appellant.

J. Edward Worton, Asst. U. S. Atty., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before RIVES, JONES and BROWN, Circuit Judges.

BROWN, Circuit Judge.

In another sordid story of the White Slave Traffic, Appellant, in challenging the sufficiency of the evidence to sustain his conviction for violation of 18 U.S. C. § 2421, attacks primarily the admission in evidence of Appellant's confession of a prior, similar offense and testimony that, subsequent to his arrest but prior to indictment, the victim (his wife) of this transportation made an unequivocal tender of herself in commercial prostitution.

On the trial defendant offered no proof. Appellant did not testify, and the victim, his wife, when called by the Government claimed, and the Court sustained, her marital privilege. The case standing thus, the crucial issue of the intent for the interstate transportation became, as a necessity, one to be established by legitimate inferences.

In support of the indictment of transportation about February 11, 1954, from Ohio to Miami, Florida, the proof was simple: Agents of the FBI had the Appellant and his wife the victim, Mary Lindsey, under surveillance on the morning of February 11. During that day the Appellant and his wife drove from their hotel in the City of Miami to a parking place close to the Demetree Hotel. The automobile being used was a new Chevrolet bearing an Ohio license, a recent sticker from Cincinnati, Ohio, and whose speedometer showed a reading of but 2,118 miles. The Appellant and his wife went into a bar adjacent to and a part of the Demetree Hotel.

While at the bar Appellant, his wife, and Abrahams, proved later to be a clerk there, engaged in conversation within the hearing of the FBI agent, the significant parts of which, for our purposes, being the statement that Appellant and his wife had just gotten in the night before from Cincinnati, and the inquiry by Abrahams to Appellant, "Have you seen Jimmy yet about giving her [Mary Lindsey] a job?", and Appellant's response, "No. That's what I am here for now."

Appellant again returned to the Demetree Hotel in the same automobile later that day. The jury could have found that on this occasion Mary Lindsey remained in the car while Appellant went into the hotel.

Four days later, February 15, Appellant was arrested on a Commissioner's Warrant and presumably released on bond.

It was sufficiently established that the Demetree Hotel had the reputation in Miami of being a house of prostitution, and, by the proof of the event occurring on March 3 and the Appellant's confession of his prior act, there was enough to permit the jury to conclude that Jimmy Demetree the operator of the Demetree Hotel, and the "Jimmy" referred to in the barroom conversation were one and the same.

On March 3, subsequent to Appellant's arrest, a Miami police officer, a member of a special Detail to check known places of prostitution, entered the Demetree Hotel, acquired a room, and the Desk Clerk, Jimmy Demetree, instructed the bellboy to take this man to a specified room. The bellboy unlocked that door,

opened it, and Mary Lindsey was standing inside. The agreement for prostitution was apparently quickly made, the officer paid Mary Lindsey $20.00, she had disrobed, and at this time the officer identified himself and stated she was under arrest for prostitution. Some three weeks later, on the trial for prostitution in a City Court with this officer as the prosecuting witness, Mary Lindsey was acquitted. This record is sketchy on the basis for such action although, as we view it, the acquittal is quite immaterial.

The Government then proved up the written statement August 1, 1951, signed by Appellant in Cincinnati, Ohio, stating that in April 1949 he, his wife, Mary Lindsey and her sister and the sister's husband drove from Cincinnati, Ohio, in his automobile to Florida for the purpose of putting them to work in a house of prostitution. He anticipated that they could "go to work" for Jimmy Demetree and on arrival in Miami, Florida, they did go to work for Jimmy Demetree at Demetree's house of prostitution in Miami (apparently this house and the Demetree Hotel are a few blocks apart). Mary Lindsey and her sister worked as prostitutes for three weeks, were arrested three times, and, during all this time, in the tradition of the trade, Appellant took his wife's earnings.

■ In assaying the admissibility of the evidence of the prior act, it is significant that it was not offered or submitted by the trial court to the jury for the purpose of proving the *act* of transportation from Ohio to Miami. This act was established by independent evidence comprising the Appellant's post-event declarations of transportation and arrival, with adequate corroboration, if needed, see Smith v. United States, 348 U.S. 147, 154, 155 footnote 3, 75 S.Ct. 194; Wigmore on Evidence § 821(3) p. 243 Vol. III, §§ 2070–2074 pp. 393–406 Vol. VII, by such undisputed physical facts as the new Chevrolet automobile, the Ohio license plate, the Cincinnati sticker, and the small mileage reading on the speedometer.

■ The offense, of course, is not the mere transportation or the procurement of it—it is the transportation of a female for the *purpose* of the interdicted acts of prostitution, debauchery, or other immoral purpose, or with the *intent* and the purpose to induce, entice, or compel such female to become a prostitute or engage in such acts, 18 U.S.C. § 2421. Since the transportation must have the evil purpose of prostitution or the related immoral practices, the prosecution had to establish that the admitted (or proved) trip from Ohio to Miami had, for one of its reasons, Daigle v. United States, 1 Cir., 181 F.2d 311; Masse v. United States, 5 Cir., 210 F.2d 418, been undertaken for the accomplishment of such unlawful purposes. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442. This motivation for the transportation need not be proved by direct evidence. It, too, may be established by circumstances giving rise fairly to the inference. Obviously an accused will not himself ordinarily disclose his intent, United States v. Sorrentino, D.C., 78 F.Supp. 425, affirmed 3 Cir., 175 F.2d 721, and those experienced by arrests, prosecutions or other difficulties with law enforcement agencies as a result of engaging in the traffic *over a period of substantial time*, will carefully avoid any act proving directly the evil purpose. In this sense the two pieces of challenged evidence are of the same fabric—each presented circumstances from which it was obviously relevant and persuasive, if accepted by the jury, to establish that the journey from Ohio to Miami was not an innocent one or one wholly for a lawful purpose, but was undertaken to reap the fruits of prostitution. Each having the inherent quality of great relevance, it was immaterial that one concerned an event *before* and the other *after* the physical transportation. United States v. Reginelli, 3 Cir., 133 F.2d 595, 598; United States v. Pape, 2 Cir., 144 F.2d 778; Cf. Witters v. United States, infra.

■ The subsequent event of March 3 established without question the oc-

cupation of Mary Lindsey. And, when considered in the setting of the initial visit to the Demetree Hotel, a known place of prostitution, immediately after arrival on the interstate journey, and the fact that the act of prostitution was about to take place in that very establishment with the immediate and effective assistance of the same man—Jimmy Demetree—it was sufficient to support the inference that this had been a substantial reason for the interstate trip. It was not, as urged, essential to connect Appellant with having authorized, acquiesced, or benefited by the event of March 3. The offense was the transportation about February 11 with the evil purpose. The subsequent events merely tended to prove what that purpose was. And one who thus unlawfully transports need have no further connection or commercial interest, direction or control over the victim's subsequent activities. Caminetti v. United States, supra.

It is plain that the purpose for which the interstate transportation is undertaken may be inferred from the conduct of the parties within a reasonable time before and after the transportation, Neff v. United States, 8 Cir., 105 F.2d 688, 691; Grayson v. United States, 8 Cir., 107 F.2d 367, 370; United States v. Reginelli, supra, and the fact of Appellant's earlier arrest is of no moment. The act of March 3 took place in point of time sufficiently close to the transportation under scrutiny as to have a reasonable relation to it and Appellant was, of course, tried and convicted not upon the Commissioner's Warrant of Arrest, but upon the indictment returned seven months later on September 15, 1954.

The Government suggests that the evidence briefly summarized here is itself adequate, without the use of the confession of the prior act, to afford ample basis for the jury's conclusion that the interstate journey was for this evil purpose. We find it unessential to pass upon that subsidiary question since we entertain no doubt that, under these circumstances, Appellant's statement was clearly admissible. It was, of course, clearly relevant especially where, as here, the prior event was practically identical with that presented by the indictment even to the extent of minute details as to the point of origin, identity of the victim, point of destination, the location of the neighborhood, and the identity and name of the person operating the house of prostitution.

Because of its relevance, the law recognizes the necessity for safeguards against the use of evidence of prior criminal acts where, in relation to the charge under scrutiny, its use merely tends to prove that the defendant is bad, given to unlawful acts or disposition and, because so disposed, he must be guilty of the act then being tried. Wigmore on Evidence § 57, p. 454 et seq. Vol. I, Cf. §§ 192, 193, p. 641 et seq. Vol. I. But where the prior acts bear sufficient similarity to the one under inquiry and are not too remote in point of time, evidence of such prior acts, notwithstanding their criminality, are admissible on the issue of the intent with which an act was done where intent, as such, is a critical ingredient of the offense charged. Wigmore on Evidence, §§ 300, 302, 305, p. 192 et seq. Vol. II. We have long recognized the admissibility of such evidence generally, Weiss v. United States, 5 Cir., 122 F.2d 675, 682, and particularly in Mann Act cases, Cohen v. United States, 5 Cir., 1941, 120 F.2d 139, and this reflects the views of other Federal Courts, Baish v. United States, 10 Cir., 90 F.2d 988; Butler v. United States, 10 Cir., 53 F.2d 800; Neff v. United States, 8 Cir., 105 F.2d 688; United States v. Pape, 2 Cir., 144 F.2d 778; and see Witters v. United States, 70 App.D.C. 316, 106 F.2d 837, 125 A.L.R. 1031.

Of course, the trial court, sensitive to the human tendency to convict because of a known bad character, a record of unlawful actions or a disposition toward unlawful conduct, must make certain that the jury understand in unmistakable language that such evidence of prior acts relates only to the issue of intent.

And it must be equally vigilant that the prior act is sufficiently related in time and similarity to afford a just and reasonable basis that having done the specified act on the prior occasion, the probability is that when the act under investigation was repeated, he was actuated by the same intent, Cf. Dyar v. United States, 5 Cir., 186 F. 614; Taliaferro v. United States, 5 Cir., 213 F. 25; Gordon v. United States, 5 Cir., 254 F. 53; Lloyd v. United States, 5 Cir., 226 F.2d 9. Here, of course, the prior act satisfied these requirements, and the court carefully restricted the use of such evidence on the question of intent.

The judgment is

Affirmed.