**UNITED STATES of America, Plaintiff,**

v.

**Daniel F. SHEEHAN, Defendant.**

**Crim. No. 92–10312–DPW.**

United States District Court,
D. Massachusetts.

Dec. 28, 1994.

Lawrence F. O'Donnell, O'Donnell, O'Donnell & O'Donnell, Quincy, MA, for Daniel F. Sheehan, Jr.

John B. Shorton, Newton, MA, Michael F. Farrington, Quincy, MA, for Pascual Casiano.

Elliot M. Weinstein, Boston, MA, for Michael F. Farrington.

Joseph F. Savage, Jr., U.S. Attys. Office, Economic Crimes Div., Boston, MA, for U.S.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

The defendant in this public corruption and obstruction of justice case was sentenced on June 4, 1993 by Visiting Judge Jack E. Tanner, before whom he had been tried by a jury, to forty six months imprisonment, a $15,000 fine to be "paid in full forthwith," and a special assessment of $200 "due immediately." The sentence was executed promptly upon its imposition and the defendant began his term of incarceration, paid his fine and paid his special assessment. He also timely appealed to the United States Court of Appeals for the First Circuit. Bail was denied pending appeal. While the appeal was pending, the defendant died. The question presented is whether the fine and special assessment monies should be returned to his estate. After considering and rejecting federal precedent to the contrary, I conclude that the monies must be returned.

I

When the death of the defendant was brought to the attention of the Court of Appeals, the First Circuit ordered the appeal dismissed on February 2, 1994 and remanded the case to this court "with instructions to Vacate the Judgment of Conviction and to dismiss the superseding indictment." On February 16, I entered an order vacating the judgment and dismissing the indictment.

On April 7, 1994 the Financial Administrator in the Clerk's Office of this Court, acting upon the request of the defendant's counsel and the Financial Litigation Unit of the United States Attorney's Office, submitted a form of order providing authority to refund the fine and special assessment payments to the defendant's estate. Noting that among the cases cited by the First Circuit when remanding was *United States v. Schumann,* 861 F.2d 1234 (11th Cir.1988), which held that a defendant's "estate is not entitled to a return of the ... fine, paid prior to his death, which was assessed against him as part of his sentence," *id.* at 1236, I issued an order requiring briefing by the parties to show cause why the return of the property should not be denied.

The United States Attorney's Office reconsidered its support for the return of the monies and, relying on federal case law, now contends that the property should not be returned. The defendant's counsel, relying upon state cases and purporting to distinguish federal precedent, contends that the

monies should be returned to the defendant's estate. I find the federal case law unpersuasive. I further find that the logic of vacating the judgment requires the estate of the defendant to be put—to the extent possible—in the position it was in before judgment entered. Accordingly, I will direct the Clerk to return the monies to the defendant's estate.

## II

■ The death of a defendant pending his appeal has consistently been held to abate the prosecution *ab initio*. *See generally* John H. Derrick, Annotation, *Abatement Effects of Accused's Death Before Appellate Review of Federal Criminal Conviction*, 80 A.L.R.Fed. 446 (1986). As a consequence, the appellate courts customarily order, as did the First Circuit here, that the judgment appealed from be vacated and the indictment be dismissed. The unexecuted elements of the sentence are thus abated because there is no legal basis upon which they may be enforced. A peculiar wrinkle to these basic propositions, however, has arisen in the federal courts where some language can be found—as in the *Schumann* case cited by the First Circuit in its remand order here—for the proposition that if the fine portion of the sentence has been executed pending appeal, those monies collected before the prosecution is abated need not be returned to the defendant's estate.

The justification for the distinction between collected and uncollected fines was articulated in *Schumann* by reliance on a penal theory outlined in the early part of this century. The *Schumann* court observed:

> In *Dyar v. United States*, 186 F. 614 (5th Cir.1911), a $1,000.00 penalty was held to have abated with the death of the defendant, entitling his estate to a fund deposited as security for its payment. The court noted in dictum, "If while he had lived it had been collected, he would have been punished by the deprivation of that amount of his estate; but there is no justice in punishing his family for his offense." *Dyar, supra*, 186 F. at 623 (quoting *United States v. Pomeroy*, 152 F. 279, 282 ( [C.C.] S.D.N.Y.1907), *reversed on other grounds sub nom.*, 164 F. 324 (2d Cir.1908)). Be-

cause Schumann paid the fine before his demise, the penalty operated as a punishment to him rather than to his estate.

861 F.2d at 1236 (citation omitted).

A contemporary explanation of the penal theory of abatement was provided in *United States v. Bowler*, 537 F.Supp. 933 (N.D.Ill. 1982):

> the principle of abatement is not based entirely upon a policy favoring the efficient use of judicial resources. If it were, then criminal appeals only would be dismissed, not the underlying judgment and indictment. Instead ... the rationale of the principle of abatement is that an indictment, conviction and sentence are charges against and punishment of the defendant and if the defendant is dead, there no longer is a justification for them.

*Id.* at 936. The *Bowler* court granted the defendant's motion to abate a fine after death during a pending appeal of the denial of defendant's motion to correct judgment. It noted, however, that the principle of abatement "does not apply to fines already paid, since the purposes of the fines were served insofar as they denied defendant some of his resources before death." 537 F.Supp. at 936 n. 5 (citation omitted).

*Bowler*, in turn, was influenced by *United States v. Morton*, 635 F.2d 723 (8th Cir.1980), in which the defendant died after affirmance of his conviction on appeal (and denial of a writ of certiorari) but before collection of the fine imposed in the criminal judgment. The Eighth Circuit held that the uncollected fine abated with the death of the defendant. The court noted, however, that because "Morton's conviction remains intact after death because it was duly affirmed[,] [o]nly the unserved portion of the sentence and the uncollected fine abated upon his death." *Id.* at 726 n. 5 (citation omitted).

## III

I find the several cases discussed in Part II curiously out of focus. By emphasizing the various penal dimensions to sentences partially executed before they are abated, the cases lose sight of the fundamental character of the issue: the ultimate judicial determina-

tion to render null and void the underlying judgment. By choosing to make vacatur of the underlying judgment a concomitant of abatement of a prosecution, the courts have effectively treated the relevant judicial directives in the judgment to be without force and effect. As a legal matter the outcome of a vacatur of a criminal judgment should be the same whether achieved by successful appeal or by abatement. In both circumstances the finality of the underlying judgment has been held in abeyance pending the outcome of the appeal as of right provided in the federal courts.[1]

■ To be sure, the defendant who has not been enlarged on bail pending an appeal in which his judgment is vacated does not reap the full benefit of that conclusion of the proceeding, whether he is dead or alive. Time served pursuant to a judgment later voided cannot be recovered by any defendant who serves that time. *Cf. Oses v. United States*, 833 F.Supp. 49, 53 (D.Mass.1993). But this unhappy circumstance does not mean that the defendant (or his estate) should also be deprived of fine monies taken by a judgment determined to be without any legal force. Fine monies collected before a successful appeal results in the vacatur of the judgment and dismissal of the proceeding must be returned to the defendant. There is no reason why fine monies collected pending an appeal terminated by a vacated judgment should not be returned whenever a vacatur is achieved, regardless of whether vacatur results from abatement of the proceeding. The outcome of the vacatur of a criminal judgment in both circumstances is formally to extinguish the legal vitality of the proceeding and its underlying judgment.

■ It is possible, of course, to construct different rules regarding the finality of criminal judgments in order to create differences between vacatur of a criminal judgment on the merits and vacatur by abatement. But such differential rules would require an overarching principle that a criminal judgment pending appeal is final unless reversed. And if that were the overarching principle there would be no need to vacate the judgment at all upon abatement. In the case of a defendant who dies pending appeal, the appeal could simply be dismissed and the judgment would remain standing. But that is not what vacatur and dismissal of the underlying indictment import.[2]

The legally relevant distinction is not between punishing individuals and punishing their families or estates; it is between judgments which have become final following appeal and those which have not. Indeed, I can find no rigorously developed reason—apart from a humane desire to alleviate presumed burdens on the bereaved—why a legally culpable defendant's estate should avoid being diminished because he managed to die before his debt to society had been fully recovered. For this reason I find the rationale of the case law from *Pomeroy* and *Dyar* to *Schumann* and *Bowler* to be unpersuasive and the outcome in *Morton* to be questionable. By the same token, while there may be a measure of vestigial satisfaction—as limned in *Bowler*, 537 F.Supp. at 936 n. 5—to be derived from declining to return some por-

---

1. An arguably different analysis would be appropriate for a compensatory restitution order embodied in a criminal judgment but having its source in a separate agreement of the parties. *See generally United States v. Asset*, 990 F.2d 208 (5th Cir.1993). If, however, the underlying propriety of the restitution order, as opposed to whether it abated upon the defendant's death, were the subject of a pending appeal as of right, there would appear to be no meaningful distinction in terms of finality analysis. In those circumstances, it would appear appropriate to vacate the restitution order being challenged on the merits in the abated appeal.

2. The distinction is evident in the different judicial response to a defendant's death pending a request for discretionary appellate review and pending appeal as of right. The Supreme Court will dismiss a pending petition for certiorari, without ordering vacation of the underlying judgment, upon the death of the petitioner. *Dove v. United States*, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976) (overruling *Durham v. United States*, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971)). By contrast, a Court of Appeals before which an appeal as of right is pending will not only dismiss the appeal, it will also order the underlying judgment vacated and remand for dismissal of the indictment. *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir.1977). *Compare Commonwealth v. De La Zerda*, 416 Mass. 247, 619 N.E.2d 617 (1993) (same distinction drawn in state system).

tion of the fine of a convicted defendant who manages to escape the finality of his judgment by passing to another reward before the judgment can be affirmed and the full measure of his sentence can be imposed, the sources of such satisfactions are not found in a reasoned evaluation of the relevant juridical concepts. And such satisfactions are not properly available unless the underlying judgment is final; until it is, the payment of a fine or special assessment is provisional pending the outcome of the appeal. In the ultimate analysis, it is the finality of the judgment which is critical to any reasoned response to the issues here.

There can be found in the case law the potential for a set of similarly irrelevant subsidiary distinctions between fines collected and those either uncollected or secured by conditional financial instruments, such as letters of credit, *Bowler*, 537 F.Supp. 933, or by escrow-like deposits in court registries, *Dyar*, 186 F. 614. The manner by which satisfaction of a fine obligation is undertaken or secured should, however, have no role in determining whether fine monies should be refunded or pursued. The single relevant factor must be whether the obligation has become final.

It may be a strained and arid policy analysis that speculates whether—and, if so, how—properly advised defendants in response to various judicial distinctions will choose to secure or satisfy the financial obligations imposed by a judgment under appeal. Intimations of mortality are rarely identified—even by convicted criminal defendants—with sufficient clarity to stimulate such refined strategies. The courts, however, ought not to proliferate distinctions which might encourage defendants to avoid making prompt—if legally provisional—payments of the financial obligations in criminal judgments they seek to overturn. A defendant such as the defendant here, for whom the accrual of interest is not waived in the judgment, may well choose to hedge against accruing interest, 18 U.S.C. § 3612(f) (interest begins to accrue "on any fine of more than $2,500 unless paid in full before the fifteenth day after the date of the judgment"), by satisfying his fine obligation while pursuing an appeal. The prospect that any monies paid over to satisfy a fine while the appeal is pending will not be returned if the judgment is vacated by reason of the defendant's death certainly discourages making prompt payments of such financial obligations and may increase subsequent collection costs.

Nothing in a fully reasoned analysis of the implications of the First Circuit's order to vacate the judgment against the defendant justifies declining to return the fine and special assessment monies he paid pending his appeal. To do so would only provide a disincentive to other defendants pursuing an appeal who might otherwise seek promptly to satisfy their financial obligations while they contest them.

## IV

For the reasons set forth more fully above I hereby ORDER that the Clerk of Court refund, by means of a check issued and made payable to the "Estate of Daniel Sheehan," the monies collected for the fine and special assessment imposed on the defendant Daniel Sheehan. I will stay the ORDER for 30 days to permit the government the opportunity to consider whether to appeal. Should the government choose not to appeal, it shall promptly notify the court so that the funds may be returned promptly.