CYPHER, J.
**583 In this appeal, the Commonwealth asks us to reconsider the viability of the common-law doctrine of abatement ab initio, whereby, as was the case here, a criminal conviction is vacated and the indictment is dismissed after the defendant dies while his direct appeal as of right challenging that conviction is in process. The justification for the adoption of the doctrine has never been explicated, and several compelling arguments weigh against it. Indeed, many other jurisdictions have, with increasing frequency in recent years, rejected the doctrine and followed alternative approaches. The Commonwealth urges us either to abandon the doctrine altogether or to recognize an exception to the doctrine where, as has been suggested may have been the case here, a defendant commits suicide to prevent the application of the doctrine and thereby collaterally to benefit surviving family members, heirs, or other beneficiaries.[1]
*110 We conclude that the doctrine of abatement ab initio is outdated and no longer consonant with the circumstances of contemporary life, if, in fact, it ever was. Rather, when a defendant dies irrespective of cause, while a direct appeal as of right challenging his conviction is pending, the proper course is to dismiss the appeal as moot and note in the trial court record that the conviction removed the defendant's presumption of innocence, but that the conviction was appealed and neither affirmed nor reversed because the defendant died. We conclude that this approach, which otherwise applies only prospectively, should apply in the present case.
1. Background. Following a jury trial, the defendant was convicted of, among other things, murder in the first degree and sentenced to the mandatory term of life imprisonment with no eligibility for parole.[2] About two years later, the defendant died[3] **584 while awaiting assembly of the record for his appeal.[4]
The defendant's appellate counsel filed a suggestion of death and motion to abate in the trial court, requesting that the court dismiss the defendant's appeal,[5] vacate his convictions, and dismiss the underlying indictments. The Commonwealth opposed the latter two requests. After hearing, the judge, who was also the trial judge, issued a thorough and reasoned memorandum of decision concluding that she was bound by precedent emanating from this court to apply the doctrine of abatement ab initio. Consequently, she allowed defense counsel's motion, dismissed the defendant's notice of appeal, vacated his convictions, and dismissed the indictments. We granted the Commonwealth's application for direct appellate review.[6]
2. State of the law. The doctrine of abatement ab initio provides that the death of a defendant "pending direct review of a criminal conviction abates not only the appeal but also all proceedings had in the prosecution from its inception." Durham v. United States, 401 U.S. 481, 483, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971) (per curiam). "That is, the appeal does not just disappear, and the case is not merely dismissed. Instead, everything associated with the case is extinguished, leaving the defendant as if he had never been indicted or convicted" (quotation and citation omitted). United States v. Estate of Parsons, 367 F.3d 409, 413 (5th Cir. 2004). The doctrine "is not grounded in the constitution or in statute, but is instead a court-created common law doctrine" (citation omitted). People v. Griffin, 328 P.3d 91, 92 (Colo. 2014). See *111 Bevel v. Commonwealth, 282 Va. 468, 478, 717 S.E.2d 789 (2011) ("It does not appear that abatement of a criminal case is addressed by statute in any jurisdiction in the United States"); State v. Webb, 167 Wash. 2d 470, 474, 219 P.3d 695 (2009) (lack of "authority holding as a constitutional matter that abatement of a conviction is required when a defendant dies pending an appeal").
The origin of the doctrine "is unclear, with little or no evidence **585 of its application prior to the late nineteenth century.... These early decisions were occasionally quite terse and provide little insight into the reasons the courts elected to abate a case or not, or even as to what aspect of the case was being abated -- the appeal only or the entire prosecution" (citation omitted). Bevel, 282 Va. at 475, 717 S.E.2d 789. "Despite the common acknowledgement that abatement ab initio is well-established and oft-followed ..., few courts have plainly articulated the rationale behind the doctrine." Estate of Parsons, 367 F.3d at 413. Or, as another court put it, the "rule that an action abates with the death of a party is one of antiquity" and "[t]he reason for the rule has been lost in antiquity" (citations omitted). People v. Ekinici, 191 Misc. 2d 510, 516-517, 743 N.Y.S.2d 651 (N.Y. S. Ct. 2002). In many respects, this describes the evolution of the doctrine of abatement ab initio in Massachusetts.
a. Abatement in Massachusetts. It has been suggested on several occasions, including by the trial judge in her memorandum of decision, by a commentator on appellate procedure, see J.F. Stanton, Appellate Procedure § 5:56 (3d ed. Supp. 2017), and even by this court in a recent summary disposition, see Commonwealth vs. Luke, SJC-11629, order (July 21, 2016), that the doctrine of abatement ab initio represents the "longstanding" practice in Massachusetts. The first reported appellate case acknowledging the doctrine in Massachusetts, however, was issued in 1975. See Commonwealth v. Eisen, 368 Mass. 813, 813-814, 334 N.E.2d 14 (1975). It strains credulity then to suggest that the doctrine has been a long-standing or historic staple of Massachusetts common law, especially when contrasted with other jurisdictions. See, e.g., Griffin, 328 P.3d at 93 (doctrine first recognized by Supreme Court of Colorado in 1904); State v. West, 630 S.W.2d 271 (Mo. Ct. App. 1982) (tracing doctrine to Supreme Court of Missouri case from 1874).
It also would be a stretch to suggest, as the defendant does here, that the doctrine of abatement ab initio was "formally" adopted by this court in Eisen, 368 Mass. at 813, 334 N.E.2d 14. That decision, a rescript, is more notable for brevity than insight. We did not declare that we were adopting the doctrine, nor did we comment on the potential benefits or shortcomings of its approach or that of any other approach. We simply stated that "[w]hen a criminal defendant dies pending his appeal, normally the judgment should be vacated and the indictment dismissed. This is the general practice elsewhere" (emphasis added). Id. at 813-814, 334 N.E.2d 14, and cases cited. We concluded:
**586 "The asserted general importance of certain issues and counsel's able presentation of his client's appeal do not justify a different result. Any personal interest in vindication which a member of the defendant's family may have is not sufficiently substantial to warrant our deciding the appeal.... Although given an opportunity to do so, neither the Commonwealth nor the defendant's counsel has advanced any other reason why a decision on this appeal should be made" (citations omitted).
Id. at 814, 334 N.E.2d 14. We remanded for dismissal of the indictment. Id.
*112 In the ensuing forty-four years, we have applied the doctrine to a direct appeal as of right from a conviction in two reported decisions, both rescripts, both even terser than Eisen. First, in Commonwealth v. Harris, 379 Mass. 917, 398 N.E.2d 726 (1980), we essentially restated our holding and reasoning from Eisen and remanded for dismissal of the indictment. In Commonwealth v. Latour, 397 Mass. 1007, 493 N.E.2d 500 (1986), again citing Eisen, we stated that, "[w]hen a criminal defendant dies pending his appeal, the general practice is to dismiss the indictment" (emphasis added), and concluded, in even briefer terms than either Eisen or Harris, that "[t]here is nothing about the issues raised in this appeal that leads us to vary this general rule." Id. Accordingly, we remanded for dismissal of the complaint. Id.
Those cases make up the universe of appellate jurisprudence on the doctrine before us.[7] In sum, abatement ab initio is "normally" or "generally" the rule, although it appears to be so for no other **587 reason than because that was the practice elsewhere.
b. Federal approach. The Federal courts apply the doctrine of abatement ab initio when a defendant dies during the pendency of an appeal as of right. In Durham, 401 U.S. at 481, 91 S.Ct. 858, which we cited in Eisen, 368 Mass. at 814, 334 N.E.2d 14, the defendant filed a petition for writ of certiorari seeking review of the decision of a Federal Court of Appeals affirming his criminal conviction. While the petition was pending, he died. Durham, supra. The United States Supreme Court, after noting that lower Federal courts had been "unanimous" and "correct" in holding that abatement ab initio applies when a defendant dies while direct review of a criminal conviction is pending, granted the writ, vacated the conviction, and remanded with directions to dismiss the indictment. Id. at 483, 91 S.Ct. 858. Five years later, the Court overruled Durham in another per curiam decision that became known for its brevity:
"The Court is advised that the petitioner died at New Bern, N.C., on November 14, 1975. The petition for certiorari is therefore dismissed. To the extent that *113 Durham... may be inconsistent with this ruling, Durham is overruled."
Dove v. United States, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976) (per curiam). See United States v. Pauline, 625 F.2d 684, 685 (5th Cir. 1980) ( Dove overruled Durham in "42 cryptic, enigmatic words"). The United States Courts of Appeals have, with the exception of one that has not addressed the issue, continued to apply the doctrine when a defendant dies pending a direct appeal as of right, having either expressly or implicitly concluded that Dove overruled Durham only with respect to the disposition of petitions for certiorari, a discretionary form of appeal.[8] There has been some divergence **588 among the Federal courts concerning whether there should be an exception to abatement for restitution orders imposed for compensatory, as opposed to penal, purposes,[9] and whether the doctrine requires reimbursement of fines that have been paid prior to the defendant's death,[10] although both issues have been the subject of renewed scrutiny after the Supreme Court held in Nelson v. Colorado, --- U.S. ----, 137 S.Ct. 1249, 1252, 197 L.Ed.2d 611 (2017), that due process requires the refund of fees, court costs, and restitution paid by a defendant when the underlying conviction has been invalidated and no retrial will occur.[11]
c. Other jurisdictions. Although it may have been arguable when Eisen was decided in 1975 that the doctrine of abatement ab initio was the majority approach, the "more recent trend offers courts options in deciding how an appeal should be handled upon the death of an appellant." State v. Salazar, 123 N.M. 778, 785, 945 P.2d 996 (1997). Abatement ab initio is far from the "general practice" now, there being, depending *114 on how granular one chooses to define the categories, anywhere from three to seven different approaches followed when a defendant dies during the pendency of a direct appeal of a conviction. Compare State v. Hollister, 300 Kan. 458, 465-466, 329 P.3d 1220 (2014) (discussing three general approaches), with Surland v. State, 392 Md. 17, 19-20, 895 A.2d 1034 (2006) (identifying five "basic choices on the menu of options"), and **589 Bevel, 282 Va. at 477, 717 S.E.2d 789 ("there are at least seven categories of policies on abatement").
By our count, eighteen States and the District of Columbia apply the doctrine of abatement ab initio, with some, like the above-mentioned Federal circuits, carving out an exception for restitution orders imposed for compensatory purposes.[12] A majority of others follow one of several different approaches. Some have opted to allow the appeal to proceed, although most limit the issues that can be considered.[13] Others *115 have opted not to allow the **590 appeal to proceed and, although not all have stated so or stated so with clarity, the underlying conviction and any related fines and restitution orders remain fully or partially intact.[14] Still others follow an approach whereby, usually pursuant to an appellate rule, the appeal can continue if a motion to substitute a new party is **591 made either by a representative of the defendant's estate, the defendant's attorney of record, the State, or another party and, in the absence of such a motion, either the appeal is dismissed and the conviction stands or the appeal, conviction, and indictment are abated.[15] The Commonwealth urges us to *116 adopt this "substitution" approach or, in the alternative, the so-called "Alabama rule," which provides that, when an appellate court abates an appeal upon the death of the defendant, as it may under an existing appellate rule, it "shall instruct the trial court to place in the record a notation stating that the fact of the defendant's conviction removed the presumption of the defendant's innocence, but that the conviction was appealed and it was neither affirmed nor reversed on appeal because the defendant died while the appeal of the conviction was pending and the appeal was dismissed." Wheat v. State, 907 So.2d 461, 464 (Ala. 2005) ; **592 Ala. R. App. P. 43 (a) (providing for substitution and stating: "When the death of a party has been suggested, the proceeding shall not abate, but shall continue or be disposed of as the appellate court may direct").
Of the different approaches followed at the State level, abatement ab initio may still qualify as the plurality approach, but a majority of State courts have rejected it and chosen to go in another direction.[16] Therefore, although it may have been arguable when Eisen was decided in 1975 that the doctrine of abatement ab initio was the preferred or majority approach, it is no longer the case. See Salazar, 123 N.M. at 785, 945 P.2d 996.
Still, Eisen represents precedent, and, as this court reaffirmed only recently,
"adhering to precedent is our preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.... It also reduces incentives for challenging *117 settled precedents, saving parties and courts the expense of endless relitigation.... Parties should not be encouraged to seek reexamination of determined principles and speculate on a fluctuation of the law with every change in the expounders of it" (quotations and citations omitted).
Shiel v. Rowell, 480 Mass. 106, 108-109, 101 N.E.3d 290 (2018). "Overruling precedent requires something above and beyond mere disagreement with its analysis." Id. at 109, 101 N.E.3d 290.
The principle of stare decisis, however, "is not absolute. No court is infallible, and this court is not barred from departing from previous pronouncements if the benefits of so doing outweigh the **593 values underlying stare decisis." Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 562, 808 N.E.2d 205, cert. denied sub nom. Wilfert Bros. Realty Co. v. Massachusetts Comm'n Against Discrimination, 543 U.S. 979, 125 S.Ct. 481, 160 L.Ed.2d 356 (2004). This is particularly true when the rule at issue is one of common law, of judicial creation:
"[I]t is within the power and authority of the court to abrogate this judicially created rule; and the mere longevity of the rule does not by itself provide cause for us to stay our hand if to perpetuate the rule would be to perpetuate inequity. When the rationales which gave meaning and coherence to a judicially created rule are no longer vital, and the rule itself is not consonant with the needs of contemporary society, a court not only has the authority but also the duty to reexamine its precedents rather than to apply by rote an antiquated formula."
Lewis v. Lewis, 370 Mass. 619, 628, 351 N.E.2d 526 (1976). "One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court." Id., quoting State v. Culver, 23 N.J. 495, 505, 129 A.2d 715, cert. denied, 354 U.S. 925, 77 S.Ct. 1387, 1 L.Ed.2d 1441 (1957).
Because the doctrine of abatement ab initio "is largely court-created and a creature of the common law, the applications of abatement are more amenable to policy and equitable arguments." Estate of Parsons, 367 F.3d at 414. Furthermore, we never have examined the policies and arguments for and against the doctrine or considered any alternative approaches. To date, the justification for adopting the doctrine was the simple fact that it was perceived to be the favored approach elsewhere. Considering the consequences of abatement ab initio to victims and family members of the defendant, it is appropriate that we examine reasons underlying the doctrine.
4. Analysis. Historically, the two reasons advanced in favor of abatement ab initio are referred to as the "finality principle" and the "punishment principle." See State v. Burrell, 837 N.W.2d 459, 468 (Minn. 2013), quoting Estate of Parsons, 367 F.3d at 413. We examine both, as well as the countervailing arguments that have been made with increasing frequency.
a. Finality principle. The finality principle has been described in many ways, all of which rest upon the premise that a trial and **594 appeal are essential parts of our system of justice and that a conviction should not stand until a defendant has had the opportunity to pursue both. See, e.g., Surland, 392 Md. at 24-25, 895 A.2d 1034 ("when a conviction is appealed, it loses finality until the appeal is resolved and should not be permitted to stand when the defendant's death prevents the appellate court from adjudicating [its] validity"); Brass v. State, 130 Nev. 318, 322, 325 P.3d 1256 (2014) (alternative of "[o]utright dismissal could prevent a defendant's family *118 from potentially clearing a loved one's name"); Ekinici, 191 Misc. 2d at 517, 743 N.Y.S.2d 651 ("rationale of abating the appeal and dismissing the indictment after the death of a defendant is that defendant's ... right to appeal has been violated [albeit not by the State]"); Estate of Parsons, 367 F.3d at 413 ("[S]tate should not label one as guilty until he has exhausted his opportunity to appeal"). No doubt, "[t]he condemnation and punishments of the criminal justice system are awesome and devastating. That is why their imposition is hedged about with presumptions and procedural safeguards that heavily weight the risk of error in favor of the accused and are designed to assure both the appearance and the reality that the accused had every fair opportunity of defense." Commonwealth v. Amirault, 424 Mass. 618, 636-637, 677 N.E.2d 652 (1997) ("once the process has run its course -- through pretrial motions, trial, posttrial motions and one or two levels of appeal -- the community's interest in finality comes to the fore").
Nevertheless, "[t]here is no constitutional right to appeal from a criminal conviction" (citation omitted). Commonwealth v. Bruneau, 472 Mass. 510, 513, 36 N.E.3d 3 (2015) ("due process clause does not require a State to afford any appellate process whatsoever" [citation omitted] ). The right arises in Massachusetts by statute. See, e.g., G. L. c. 278, § 28 (authorizing appeal by persons aggrieved by judgment of District or Superior Court); G. L. c. 278, § 33E (direct appeal to Supreme Judicial Court for defendants, like defendant here, convicted of murder in first degree). One can be deprived of that right, therefore, so long as it is applied in a nondiscriminatory manner. See Aiello v. Commissioner of Pub. Welfare, 358 Mass. 91, 93-94, 260 N.E.2d 662 (1970) (no equal protection violation where appeal available to all and no invidious discrimination). See also Rinaldi v. Yeager, 384 U.S. 305, 310, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966) (States not required to establish avenues of appellate review, but once established, those avenues must be "free of unreasoned distinctions ... impeding open and equal access" to court).
Moreover, "a defendant is no longer presumed innocent after a conviction; rather a convicted defendant is presumed guilty despite **595 the pendency of an appeal, and the conviction is presumed to have been validly obtained" (footnote omitted). State v. Carlin, 249 P.3d 752, 762 (Alaska 2011). See Williams, petitioner, 378 Mass. 623, 626, 393 N.E.2d 353 (1979) ("presumption of innocence will have been abraded by the fact of the initial conviction from which the appeal is being taken"). See also Commonwealth v. Martinez, 480 Mass. 777, 784, 109 N.E.3d 459 (2018) (only overturned conviction restores presumption of innocence and erases any State claim to funds paid in form of costs, fees, or restitution). In Massachusetts, the rendering of a guilty verdict and the resulting imposition of a sentence essentially constitute a final judgment in a criminal case, immediately whereupon the consequences may be imposed on the defendant, even if an appeal is taken. See DiMasi v. State Bd. of Retirement, 474 Mass. 194, 201, 48 N.E.3d 452 (2016). See also G. L. c. 279, § 4 ("Sentence shall be imposed upon conviction of a crime, regardless of whether an appeal has been taken").[17] At that point in the process, a conviction also may have *119 potential consequences in collateral proceedings, which are discussed further infra. In Massachusetts, as elsewhere, a trial court judgment is final for purposes of res judicata or issue preclusion regardless of the fact that it is on appeal. See O'Brien v. Hanover Ins. Co., 427 Mass. 194, 200-201, 692 N.E.2d 39 (1998) (adopting rule followed federally and in majority of other States).
As many of the courts that have rejected the doctrine have noted, abatement ab initio runs counter to these well-settled principles, effectively treating a defendant's appeal as though it has been successful, when, in fact, it was never decided. See, e.g., State v. Clements, 668 So.2d 980, 981 (Fla. 1996) (death of defendant does not extinguish presumably correct conviction and restore presumption of innocence which conviction overcame); Surland, 392 Md. at 34, 895 A.2d 1034 ("automatic abatement of the entire criminal proceeding ab initio ... disregards entirely the presumptive validity of the conviction"); People v. Peters, 449 Mich. 515, 521, 537 N.W.2d 160 (1995), cert. denied, 516 U.S. 1048, 116 S.Ct. 710, 133 L.Ed.2d 665 (1996) (abatement rejected because conviction destroys presumption of innocence regardless of existence of appeal of right); State v. McGettrick, 31 Ohio St. 3d 138, 141, 509 N.E.2d 378 (1987) (refusing to ignore that defendant **596 was convicted and, thus, no longer "cloaked with the presumption of innocence" during appellate process). See also State Farm Fire & Cas. Co. v. Caton's Estate, 540 F.Supp. 673, 683 (N.D. Ind. 1982), overruled on other grounds, Ashland Oil, Inc. v. Arnett, 656 F.Supp. 950 (N.D. Ind. 1987) (suggesting that issue preclusion would not apply to defendant whose conviction was abated for simple reason that "no underlying previous decision now exists").
Of course, as has been acknowledged by many courts, allowing a conviction to stand where a defendant has taken a direct appeal as of right, without deciding the appeal, effectively treats the appeal as meritless. See, e.g., Griffin, 328 P.3d at 92-93 ; State v. Makaila, 79 Hawai'i 40, 45, 897 P.2d 967 (1995) ("it seems unreasonable automatically to follow the abatement ab initio rule and pretend that the defendant was never indicted, tried, and found guilty[, but] outright dismissal of the appeal -- without the possibility of a review of the merits -- seems equally unacceptable"); Gollott v. State, 646 So.2d 1297, 1300 (Miss. 1994) ("if the abatement ab initio rule is perceived to be unjust, it is equally unjust to allow a conviction to stand and be used against the deceased's estate for various collateral matters as if the appeal had been heard and the conviction affirmed"); Howell v. United States, 455 A.2d 1371, 1372 (D.C. App. 1983) ("[w]hile trial court's judgment carries a presumption of validity, the very essence of a presumption is its vulnerability to refutation"). The finality principle remains fundamental to our system of justice, yet other well-settled principles regarding the effect of a conviction and the scope of the right to an appeal remind us that it is not altogether inviolable.
b. Punishment principle. The punishment principle, which is often framed in terms of mootness or loss of jurisdiction, "focuses on the precept that the criminal justice system exists primarily to punish and cannot effectively punish one who has died." Estate of Parsons, 367 F.3d at 414. See State v. Kriechbaum, 219 Iowa 457, 465, 258 N.W. 110 (1934) ("Death withdrew the defendant from the jurisdiction of the court"); Carver v. State, 217 Tenn. 482, 486, 398 S.W.2d 719 (1966) ("The defendant in this case having died is relieved of all punishment by human hands and the determination of his guilt or innocence is *120 now assumed by the ultimate arbiter of all human affairs"). Some courts have further stated the principle in terms of not visiting "punishment" upon the innocent family, heirs, or beneficiaries of the deceased defendant. See State v. Campbell, 187 Neb. 719, 720, 193 N.W.2d 571 (1972) ("there appears to be no sufficient reason to make a decedent's estate as distinguished from the decedent himself liable **597 for costs of prosecution where there is no final judgment of conviction"); Webb, 167 Wash. 2d at 473, 219 P.3d 695 ("object of criminal punishment is to punish the offender, not his or her heirs or beneficiaries").
Some courts have questioned the punishment principle and whether the interests of others, not just of the defendant, should be considered. For example, even though the defendant is deceased and can no longer be punished, the State, as the representative of the community, continues to have an interest in maintaining a conviction. See Makaila, 79 Hawai'i at 45, 897 P.2d 967 ("The State has an interest in preserving the presumptively valid judgment of the trial court"); Ekinici, 191 Misc. 2d at 518, 743 N.Y.S.2d 651 (same); McGettrick, 31 Ohio St. 3d at 141, 509 N.E.2d 378 (abatement ab initio "would not be fair to the people of this state who have an interest in and a right to have a conviction, once entered, preserved absent substantial error"). In addition, through State Constitutions, statutes, and other avenues, the justice system acknowledges the rights and interests of the victims of crime. See, e.g., Wheat, 907 So.2d at 463-464 (rights of victims have been recognized in Alabama Constitution and through extensive statutory protection); Carlin, 249 P.3d at 759 ("Alaska's statutes and its constitution now also require the criminal justice system to accommodate the rights of crime victims. The abatement of criminal convictions has important implications for these rights"); State v. Korsen, 141 Idaho 445, 449, 111 P.3d 130 (2005) ("In recent years, the state of Idaho has ... provided substantial constitutional and statutory rights and protections for victims of crime"); Brass, 130 Nev. at 322, 325 P.3d 1256 ("Vacating the judgment and abating the prosecution from its inception undermines the adjudicative process and strips away any solace the victim or the victim's family may have received from the appellant's conviction").
In this regard, Massachusetts is no exception, having, among other things, enacted a bill of rights for victims, G. L. c. 258B, § 3 (o ) (right, among others, "to request that restitution be an element of the final disposition of a case"), and created the Domestic and Sexual Violence Prevention and Victim Assistance Fund, G. L. c. 17, § 20. And, as we have recognized, "[w]hen a serious crime has been committed, the victims and survivors, witnesses, and the public have an interest that the guilty not only be punished but that the community express its condemnation with firmness and confidence." Amirault, 424 Mass. at 637, 677 N.E.2d 652.
Courts and commentators also have taken note of the potential impact abatement ab initio can have on collateral matters, including **598 undermining the potential application of issue preclusion. See Gollott, 646 So.2d at 1301-1302 (doctrine of issue preclusion will hinder if not destroy defense of civil suit if jury verdict is allowed to stand); State v. McDonald, 144 Wis.2d 531, 537, 424 N.W.2d 411 (1988) (if murder conviction stands it can prevent defendant from, among other things, receiving money from victim's estate under intestacy statute, inheriting under victim's will, receiving benefits from life insurance policy on life of victim, and receiving victim's interest jointly held property); *121 Bierer, The Importance of Being Earned: How Abatement After Death Collaterally Harms Insurers, Families, and Society at Large, 78 Brook. L. Rev. 1698, 1702 (2013) (substitution approach is ideal approach "because of the important and resounding primary and collateral effects felt by victims, insurers, families, and society at large").
Similar issues have the potential to arise in Massachusetts depending on whether the conviction stands or abates upon the death of the defendant. See, e.g., Aetna Cas. & Sur. Co. v. Niziolek, 395 Mass. 737, 742, 481 N.E.2d 1356 (1985) (party to civil action against former criminal defendant may invoke doctrine of collateral estoppel to preclude relitigation of issue decided in criminal prosecution); Campos v. Van Houtum, 45 Mass. App. Ct. 918, 918-919, 699 N.E.2d 346 (1998) (same even where conviction is on appeal); Kowalski v. Gagne, 914 F.2d 299, 303 (1st Cir. 1990) ; G. L. c. 265, § 46 ("The court shall prohibit any person charged with the unlawful killing of the decedent from taking from the decedent's estate through its distribution and disposition, including property held between the person charged and the decedent in joint tenancy or by tenancy in the entirety");[18] G. L. c. 190B, § 2-803 (b ) ("An individual who feloniously and intentionally kills the decedent forfeits all benefits under this article with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, exempt property, and a family allowance").[19]
As with the finality principle, the fundamental premise of the punishment principle is still just, and likely will remain so. As **599 more recent cases remind us, however, a criminal prosecution does not take place in a vacuum. There are a host of potential other interests than can be affected by the outcome of that prosecution and, although we must be mindful not to let any one of those other interests override a defendant's rights, they are worthy of recognition when considering the best approach to follow when a defendant dies during the pendency of a direct appeal.
c. Massachusetts approach. As we have been unable to discern a reasoned analysis for the adoption of the abatement ab initio doctrine, and in any event, we are presented with substantial reasons it should be changed, we conclude that we will no longer follow the doctrine when a defendant dies during the pendency of a direct appeal as of right challenging a conviction. Instead, upon the death of the defendant, the appeal shall be dismissed as moot and the trial court shall be instructed to place in the record a notation stating that the defendant's conviction removed the defendant's presumption of innocence, but that the conviction was appealed and it was neither affirmed nor reversed on appeal because the defendant died while the appeal was pending and the appeal was dismissed.
We take a moment to explain our reasons for rejecting the substitution approach advocated by the Commonwealth.[20]
*122 First, we have a practical reservation regarding the substitution approach. Most of the States using this approach have an appellate rule allowing for party substitution upon the death of a defendant in a criminal proceeding. We do not.[21] It has been suggested that we could exercise our superintendence authority to **600 direct the standing advisory committee on the rules of civil and appellate procedure to propose an appropriate amendment to Mass. R. A. P. 30 (a), as amended, 378 Mass. 925 (1979), to make it applicable in criminal cases and eventually to adopt such a new rule. We question the wisdom of doing so, or, at least, of our doing so.[22] There are certain practical considerations that cause us pause, such as if and how we would provide for the appointment of counsel in the event that the deceased criminal defendant was indigent and there are insufficient assets in the estate to pay for one. There are existing mechanisms to handle such an appointment, but the people who do that work, not to mention the Legislature, may well ask us how it is that we propose they fund such an undertaking should we choose to authorize it.
More importantly, as other courts have noted, because the doctrine of abatement ab initio is a judicially created, common-law rule, the Legislature has the authority to adopt or replace it. See People v. Robinson, 187 Ill. 2d 461, 464, 241 Ill.Dec. 533, 719 N.E.2d 662 (1999) (abatement ab initio has been Illinois law for over twenty years and "should be deemed controlling until and unless the General Assembly provides otherwise" [citation omitted] ); Bevel, 282 Va. at 479-480, 717 S.E.2d 789 (if abatement is to be policy in Virginia, with good cause exception, "the adoption of such a policy and the designation of how and in what court such a determination should be made is more appropriately decided by the legislature, not the courts"). Given the practical considerations involved in the substitution approach, we are of the opinion that the Legislature would be the appropriate body to adopt that particular approach, and it is free to do so, regardless of our decision here today.
We also have certain fundamental, substantive reservations about the advisability of adopting the substitution approach. In arguing in favor of that approach, the Commonwealth, like the courts that have adopted it, suggests that it is the fairest approach to all of the various parties that potentially have a direct or indirect interest *123 in the outcome of that prosecution. Although in **601 some situations that may be, beyond the State as the representative of society, and, to the extent permitted, the victim, we do not see that there are any other surviving interests that are rightly pursued within the context of a criminal prosecution. The deceased defendant, of course, has his or her reputation, but if Eisen, Harris, and Latour made anything clear, it was that the vindication of a deceased defendant is not a sufficient basis for considering a criminal appeal.[23]
It also has been suggested that other surviving third parties with interests in the outcome of an appeal could conceivably include, among others, next-of-kin, an heir, a creditor, or somebody else who shares the interest of the deceased defendant's estate.
"Undoubtedly, in some cases, the standing conviction may be consequential to such interests. Such, however, could not have been a factor for consideration in the trial proceedings and could not have been a factor in the appeal, had it been concluded.... It, therefore, is our opinion that it would be unwise for us to reach out to adopt a policy favoring survivor interests of questionable validity."
Whitehouse v. State, 266 Ind. 527, 529-530, 364 N.E.2d 1015 (1977). Id. at 530, 364 N.E.2d 1015 ("Whether or not the bona fides of a conviction may yet be tested by survivors in cases where the appeals were aborted by death is a question best left for litigation confined within the parameters of the interests claimed"). Or, as another court put it, "the mere potential impact of a conviction upon other civil obligations or proceedings does not make an appeal [of a criminal conviction] a 'definite and concrete' dispute which would satisfy justiciability requirements." State v. Benn, 364 Mont. 153, 158, 274 P.3d 47 (2012).[24]
The approach we have chosen takes into consideration and accommodates the interests of those with a direct interest in the criminal prosecution itself.
**602 "We do not see that the dismissal of the appeal, without more, denies any rights granted or protected by the statutes or the constitutional provisions. Such rights were personal to and exclusively those of the defendant. Although a criminal conviction carries a definite 'fall-out' that extends beyond the person of the defendant, we are aware of no right to be free of such, even if such conviction be erroneous. I may no more appeal my brother's conviction than I may enter his guilty plea."
Whitehouse, 266 Ind. at 529, 364 N.E.2d 1015. Under our approach, a convicted defendant is not denied any appellate rights, and especially is not deprived of such rights in a discriminatory manner. A convicted defendant's appeal and the criminal prosecution of which it is a part come to an end for the simple reason that, by whatever cause, the defendant died. The record will accurately reflect the case as it was at the time of death; it will reflect the status quo.
d. Application to this and future cases. "When announcing a new *124 common-law rule, a new interpretation of a State statute, or a new rule in the exercise of our superintendence power, there is no constitutional requirement that the new rule or new interpretation be applied retroactively, and we are therefore free to determine whether it should be applied only prospectively." Commonwealth v. Dagley, 442 Mass. 713, 721 n.10, 816 N.E.2d 527 (2004), cert. denied, 544 U.S. 930, 125 S.Ct. 1668, 161 L.Ed.2d 494 (2005). Here, the Commonwealth objected at the time to the trial judge's abatement ab initio order and then pursued this appeal and successfully urged us to abandon and replace that doctrine. Therefore, we see no reason why the Commonwealth should not have the benefit of that new rule in this case. Otherwise, the new rule shall only apply prospectively.[25]
5. Conclusion. For the reasons stated above, the trial judge's order allowing the defendant's motion to abate prosecution, dismissing the defendant's notice of appeal, vacating his convictions, and dismissing the indictments is reversed. The defendant's notice of appeal is dismissed as moot and we instruct the trial court to record a notation stating that the defendant's convictions of murder in the first degree, unlawful possession of a firearm, and unlawful possession of ammunition removed the defendant's **603 presumption of innocence as to those charges, but that the convictions were appealed and were neither affirmed nor reversed on appeal because the defendant died while the appeal was pending and the appeal was dismissed.
So ordered.

We acknowledge the amicus brief jointly submitted by the Attorney General and Massachusetts Victim and Witness Assistance Board.

He also was convicted of unlawful possession of a firearm and unlawful possession of ammunition.

There are suggestions that the cause of death was suicide and that the defendant may have been aware of the doctrine of abatement ab initio and its potential financial implications for his family, but, given our ruling, we need not, and do not, reach any conclusions in that regard, including as to the sufficiency of any such evidence.

As the record was still being assembled, the defendant's appeal had not yet been docketed in this court.

The defendant maintains that a notice of appeal from the convictions was timely filed, but no such filing is reflected on the trial court docket. As such, the defendant has filed a motion with this court requesting that we order the trial court to correct the docket. The Commonwealth has not filed any opposition and, other than noting that there does not appear to have been a "formal" notice of appeal filed, has not argued that the convictions were not properly appealed. Accordingly, we allow the defendant's motion to correct the docket.

The Commonwealth has not challenged defense counsel's continued representation of the defendant in this matter.

We discussed the doctrine in two other cases in which the defendant died after this court had granted an application for further appellate review, but before oral argument could be held. See Commonwealth v. De La Zerda, 416 Mass. 247, 619 N.E.2d 617 (1993) ; Commonwealth v. Squires, 476 Mass. 703, 71 N.E.3d 520 (2017). In De La Zerda, supra at 250-251, 619 N.E.2d 617, we concluded that the interests of justice had been served because the defendant's appeal had already undergone direct review by the Appeals Court, and vacated the order granting the application for further appellate review, dismissed the application, and allowed the Appeals Court decision to stand. In Squires, supra at 706-707, 71 N.E.3d 520, we departed from the practice in De La Zerda and addressed the appeal on the merits because the appeal of a codefendant was pending and he had, through incorporation by reference, raised the same arguments as the deceased defendant. In short, those cases involved a decidedly different issue: whether abatement ab initio should apply when a defendant, whose appeal already has undergone direct review as of right, dies during the pendency of a subsequent, discretionary appeal. That issue, unlike the one decided in Eisen, Harris, and Latour and under consideration again here, has been resolved in fairly uniform fashion in other jurisdictions. See De La Zerda, supra at 249-250, 619 N.E.2d 617. See also Surland v. State, 392 Md. 17, 19, 895 A.2d 1034 (2006) ("The law throughout the country seems clear, and by now mostly undisputed, that, if the defendant's conviction has already been affirmed on direct appeal and the death occurs while the case is pending further discretionary review by a higher court, such as on certiorari, the proper course is to dismiss the discretionary appellate proceeding and leave the existing judgment, as affirmed, intact").

See United States v. Christopher, 273 F.3d 294, 296-297 (3d Cir. 2001) ; United States v. Wright, 160 F.3d 905, 908-909 (2d Cir. 1998) ; United States v. Pogue, 19 F.3d 663, 665 (D.C. Cir. 1994) ; United States v. Davis, 953 F.2d 1482, 1486 (10th Cir.), cert. denied, 504 U.S. 945, 112 S.Ct. 2286, 119 L.Ed.2d 210 (1992) ; United States v. Schumann, 861 F.2d 1234, 1236 (11th Cir. 1988) ; United States v. Wilcox, 783 F.2d 44 (6th Cir. 1986) ; United States v. Dudley, 739 F.2d 175, 176 (4th Cir. 1984) ; United States v. Pauline, 625 F.2d 684, 685 (5th Cir. 1980) ; United States v. Littlefield, 594 F.2d 682, 683 (8th Cir. 1979) ; United States v. Moehlenkamp, 557 F.2d 126, 128 (7th Cir. 1977) ; United States v. Bechtel, 547 F.2d 1379, 1380 (9th Cir. 1977) (per curiam). Even in the circuit where the United States Court of Appeals has not addressed the issue in a published opinion, abatement ab initio appears to be the practice. See United States v. Sheehan, 874 F.Supp. 31, 33 (D. Mass. 1994) ("appellate courts customarily order, as did the First Circuit here, that the judgment appealed from be vacated and the indictment be dismissed" upon death of defendant).

Compare Christopher, 273 F.3d at 294 (restitution order not abated upon death of defendant), with United States v. Logal, 106 F.3d 1547, 1552 (11th Cir.), cert. denied sub nom. Dahod, petitioner, 522 U.S. 953, 118 S.Ct. 376, 139 L.Ed.2d 292 (1997) (restitution order abated).

Compare United States v. Zizzo, 120 F.3d 1338, 1346-1347 (7th Cir.), cert. denied sub nom. Marcello v. United States, 522 U.S. 998, 118 S.Ct. 566, 139 L.Ed.2d 406 (1997) (fines paid prior to death of defendant "analogous to time served and are not refundable"), with Sheehan, 874 F.Supp. at 35 (paid fines must be refunded to defendant's estate).

See United States v. Brooks, 872 F.3d 78, 89 (2d Cir. 2017), cert. denied, --- U.S. ----, 139 S.Ct. 171, 202 L.Ed.2d 37 (2018) (after Nelson v. Colorado, --- U.S. ----, 137 S.Ct. 1249, 1252, 197 L.Ed.2d 611 [2017], restitution order also must be abated upon death of defendant); United States v. Libous, 858 F.3d 64, 67 (2d Cir. 2017) ("at a minimum, the logic of Nelson strongly supports abating" and reimbursing fine paid prior to death of defendant); United States v. Ajrawat, 738 Fed. Appx. 136, 139 (4th Cir. 2018) (after Nelson, "can no longer say an order of restitution is an exception to [the abatement] rule").

See State v. Griffin, 121 Ariz. 538, 539, 592 P.2d 372 (1979) (upon death of defendant, appeal dismissed, conviction vacated, indictment dismissed, but request for reimbursement of fine and restitution must be pursued in separate civil procedure); People v. Schaefer, 208 Cal. App. 4th 1283, 1287-1288, 146 Cal.Rptr.3d 497 (2012) (appeal, conviction, indictments, fines, and restitution order all abated); People v. Griffin, 328 P.3d 91, 92 (Colo. 2014) (abatement ab initio applies when defendant dies during pendency of "direct appeal [i.e., first appeal as of right]"); Howell v. United States, 455 A.2d 1371, 1372-1373 (D.C. 1983) (preferable approach to dismiss appeal and remand with directions to vacate conviction and abate prosecution); People v. Robinson, 187 Ill. 2d 461, 462-463, 241 Ill.Dec. 533, 719 N.E.2d 662 (1999) (all criminal proceedings abate ab initio from inception); State v. Kriechbaum, 219 Iowa 457, 465, 258 N.W. 110 (1934) (criminal action, including appeal, conviction, and costs, deemed "abated in toto"); State v. Rose, 250 So.3d 1236, 1237 (La. 2018) (conviction vacated and all proceedings in prosecution abated from inception); State v. Carter, 299 A.2d 891, 894-895 (Me. 1973) (absent "showing of special circumstances," appeal dismissed, conviction vacated, and prosecution abated ab initio); State v. Burrell, 837 N.W.2d 459, 470 (Minn. 2013) (prosecution should abate ab initio from conviction in which restitution is not at issue); State v. West, 630 S.W.2d 271, 271 (Mo. Ct. App. 1982) (appeal abates and "judgment entered below becomes nonexistent"); State v. Campbell, 187 Neb. 719, 720, 193 N.W.2d 571 (1972) (death abates appeal and proceedings in prosecution from inception); State v. Poulos, 97 N.H. 352, 354, 88 A.2d 860 (1952) (death abates appeal and State's case against deceased defendant); People v. Matteson, 75 N.Y.2d 745, 747, 551 N.Y.S.2d 890, 551 N.E.2d 91 (1989) (death abates appeal and all proceedings in prosecution from inception); State v. Dixon, 265 N.C. 561, 562, 144 S.E.2d 622 (1965) ("Action abated; appeal dismissed" where defendant died after appeal docketed and argued); Nott v. State, 91 Okla. Crim. 316, 316, 218 P.2d 389 (1950) (purpose of criminal prosecution being to punish accused, action must necessarily abate upon death); State v. Marzilli, 111 R.I. 392, 393, 303 A.2d 367 (1973) (adopting "majority rule" that death abates appeal and all proceedings since inception); State v. Clark, 260 N.W.2d 370, 370 (S.D. 1977) (death abates not only appeal but all proceedings in prosecution from inception); Carver v. State, 217 Tenn. 482, 486, 398 S.W.2d 719 (1966) (all proceedings abated ab initio); State v. Free, 37 Wyo. 188, 188, 260 P. 173 (1927) (all proceedings abate, whether punishment consists of imprisonment, fine, or both).

See Hollister, 300 Kan. at 465-468, 329 P.3d 1220 (upon death of defendant, no abatement and direct and subsequent discretionary appeals, both provided for by statute, can proceed, but only as to issues [1] of Statewide interest and of such nature that public policy demands decision, like where issue would exonerate defendant; [2] that remain real controversy; or [3] capable of repetition); State v. Benn, 364 Mont. 153, 156-158, 274 P.3d 47 (2012) (abandoning abatement, but only allowing for appeal of issues not rendered moot by defendant's death, like challenge to restitution order); Commonwealth v. Walker, 447 Pa. 146, 147, 288 A.2d 741 (1972) ("it is in the interest of both a defendant's estate and society that any challenge initiated by a defendant to the regularity or constitutionality of a criminal proceeding be fully reviewed and decided by the appellate process"); State v. Christensen, 866 P.2d 533, 535-537 (Utah 1993) (conviction not abated and "remains intact," with case remanded to court of appeals to address issue not mooted by defendant's death; i.e., challenge to restitution order); State v. McDonald, 144 Wis.2d 531, 532, 424 N.W.2d 411 (1988) (right to appeal continues).

See State v. Trantolo, 209 Conn. 169, 170, 549 A.2d 1074 (1988) (given lack of allegation or evidence that fine levied against defendant would be collectible from estate or that conviction would otherwise affect estate's interests, appeal dismissed as moot upon death of defendant); Perry v. State, 575 A.2d 1154, 1156 (Del. 1990) (because statute provided that cause of action does not survive defendant, court no longer had jurisdiction and "ultimate disposition" would be determined by "status quo" at time of death); Harris v. State, 229 Ga. 691, 692, 194 S.E.2d 76 (1972) (appeal dismissed); State v. Korsen, 141 Idaho 445, 450, 111 P.3d 130 (2005) (appeal dismissed, conviction and any attendant order requiring payment of court costs, fees, restitution, or other sums to victim remain intact, and only provisions of judgment of conviction pertaining to custody and incarceration are abated); Whitehouse v. State, 266 Ind. 527, 529-530, 364 N.E.2d 1015 (1977) (because guilty verdict is presumed valid and ends presumption of innocence, appeal dismissed and underlying conviction unabated); Royce v. Commonwealth, 577 S.W.2d 615, 616 (Ky. 1979) (appeal dismissed as death of defendant renders case moot, while conviction, whether it be regarded as legally final or not, is history and cannot be expunged); People v. Peters, 449 Mich. 515, 517, 537 N.W.2d 160 (1995), cert. denied, 516 U.S. 1048, 116 S.Ct. 710, 133 L.Ed.2d 665 (1996) (absent collateral consequences, appeal should be dismissed and underlying conviction and accompanying compensatory sanctions should stand, but purely penal sanctions should be abated ab initio); State v. Kaiser, 297 Or. 399, 402, 683 P.2d 1004 (1984) (appellate rules allow substitution of party in civil case, but require dismissal of appeal from conviction of crime upon death of defendant); State v. Anderson, 281 S.C. 198, 199, 314 S.E.2d 597 (1984) (death of appellant abates appeal and constitutes grounds for its dismissal; rule providing for substitution of party in interest does not apply in criminal appeal); Vargas v. State, 659 S.W.2d 422, 422-423 & n.1 (Tex. Crim. App. 1983) (because death of defendant deprived court of jurisdiction, appeal and further proceedings in court below ordered "permanently abated," thereby effectively rendering them "as forever pending"); Bevel v. Commonwealth, 282 Va. at 479-481, 717 S.E.2d 789 (2011) (after concluding only Legislature could adopt doctrine of abatement, appealed dismissed as moot given specific facts and procedural posture of case, including that no party was seeking to prosecute appeal).

See State v. Carlin, 249 P.3d 752, 754 (Alaska 2011) ("defendant's conviction will stand unless the defendant's personal representative elects to continue the appeal"); State v. Clements, 668 So.2d 980, 982 (Fla. 1996) (appellate court may, upon showing of good cause by State or defendant's representative, determine appeal should proceed, but if showing not made appeal dismissed and conviction and sentence, including fines or penalties, stand); State v. Makaila, 79 Hawai'i 40, 45, 897 P.2d 967 (1995) (by rule appellate court has discretion to allow for substitution of proper party-defendant and, absent such motion, to dismiss appeal as moot, vacate conviction, and dismiss all related criminal proceedings, or enter any other appropriate order); Surland, 392 Md. at 34-35, 895 A.2d 1034 (because conviction presumed to be valid, it remains in effect unless substituted party appointed by defendant's estate elects to continue appeal and secures reversal, vacation, or modification of judgment); Gollott v. State, 646 So.2d 1297, 1304-1305 (Miss. 1994) (adopting abatement ab initio as default rule unless defendant's personal representative, defendant's attorney of record, or, more likely, State files motion, allowed by existing rule, for substitution); Brass v. State, 130 Nev. 318, 322, 325 P.3d 1256 (2014) (although deceased not entitled to have conviction vacated and prosecution abated, personal representative may, by existing rule and when justice so requires, file for substitution and continue appeal); Newark v. Pulverman, 12 N.J. 105, 116, 95 A.2d 889 (1953) (by rule, legal representative can pursue appeal to establish conviction was wrongful); State v. Salazar, 123 N.M. 778, 785-786, 945 P.2d 996 (1997) (by rule, court has discretion to allow or provide on its own for substitution and continuation of appeal, barring which criminal proceedings "completely abate" to inception); State v. McGettrick, 31 Ohio St. 3d 138, 142, 509 N.E.2d 378 (1987) (by rule, either appointed personal representative of decedent or State may motion for substitution, whereupon court shall proceed to determine appeal, but barring such motion appeal dismissed as moot, conviction vacated, and all related criminal proceedings, including indictment, dismissed); State v. Webb, 167 Wash. 2d 470, 478, 219 P.3d 695 (2009) (existing rule permits party to be substituted on appeal, but if no substitution motion filed, appeal dismissed and conviction and all financial obligations remain in effect).

As one State court recently noted, while in the process of overruling an earlier decision adopting the doctrine, "the law which has developed since [that prior case was decided] has challenged the wisdom of the policy of abating criminal proceedings upon a defendant's death." Benn, 364 Mont. at 157, 274 P.3d 47. See id. at 156, 274 P.3d 47 (concluding that it "manifestly erred" in earlier case, State v. Holland, 288 Mont. 164, 955 P.2d 1360 [1998] ). Another State court, also in the process of overruling an earlier decision adopting the doctrine, similarly noted that "it is clear that the legal landscape is very different than it was when [that prior case] was decided." Carlin, 249 P.3d at 754 (overruling Hartwell v. State, 423 P.2d 282 [Alaska 1967] ). A number of other State courts also have chosen either to abandon or narrow the application of the doctrine. See, e.g., Makaila, 79 Hawai'i at 45-46, 897 P.2d 967 ; Korsen, 141 Idaho at 445, 111 P.3d 130 ; Surland, 392 Md. at 34-35, 895 A.2d 1034 ; McDonald, 144 Wis.2d at 536-539, 424 N.W.2d 411.

A convicted defendant can seek a stay of execution of a sentence. See Mass. R. Crim. P. 31 (a), as appearing in 454 Mass. 1501 (2009); Mass. R. A. P. 6, as appearing in 454 Mass. 1601 (2009). See also Mass. R. Crim. P. 31 (c), as appearing in 454 Mass. 1501 (2009) (fines and costs shall be stayed if appeal diligently perfected).

General Laws c. 265, § 46, further provides, in relevant part: "No court shall distribute the accused's share of the decedent's assets until a verdict or finding on the charge has been rendered in open court."

General Laws c. 190B, § 2-803 (g ), provides that a person can conclusively be established as the decedent's killer (1) following a conviction and the exhaustion of all right to appeal, or (2) upon the court's determination, under a preponderance of the evidence standard, that the person would be found guilty.

The Commonwealth, by way of alternative, also had requested that we adopt a suicide exception to the doctrine of abatement ab initio in circumstances where the defendant commits suicide for the purpose of taking advantage of the abatement. Having rejected the doctrine, however, there is no need for such an exception. We note, however, that the other courts that have been asked to consider such an exception have either rejected it or, like us, not had to reach that issue. See Matteson, 75 N.Y.2d at 747, 551 N.Y.S.2d 890, 551 N.E.2d 91 ("We are unpersuaded by and accordingly reject the People's contention that defendant's suicide should be deemed a waiver or forfeiture of the right to appeal"); McDonald, 144 Wis.2d at 538, 424 N.W.2d 411 ("Permitting an appeal to continue eliminates the myriad of problems which would arise from requiring courts to determine whether the defendant's death was voluntary or involuntary").

Rule 30 (a) of the Massachusetts Rule of Appellate Procedure, as amended, 378 Mass. 925 (1979), provides, in relevant part: "If a party dies after a notice of appeal is filed in the lower court or while a proceeding is pending in the appellate court, the personal representative of the deceased party may be substituted as a party on motion filed by the representative or by any party with the clerk of the appropriate court." The rule, however, only applies in civil cases, which maintain their viability as an action after the death of a party.

If we were inclined to adopt a new rule, we could have it provide, as other States have, that only the appeal is abated upon death of the defendant. See, e.g., Ind. R. App. P. 17(B) ("death of the appellant abates a criminal appeal"); Tex. R. App. P. 7.1(a)(2) (where "the appellant in a criminal case dies after an appeal is perfected but before the appellate court issues the mandate, the appeal will be permanently abated").

As the defendant here has argued, abatement ab initio would not serve to vindicate the decedent, either. See Gollott, 646 So.2d at 1300 (defendant "does not have his 'good name' restored when the majority approach is followed. Abatement ab initio is not the same as being found innocent by a jury. Rather, the conviction is simply vacated because the defendant appealed as of right, and until the appellate Court has heard that appeal, the matter has not been fully adjudicated").

We have not been made aware of any existing or potential civil obligations or proceedings that might be affected by the ultimate fate of the defendant's conviction and appeal.

The question of the application of issue preclusion going forward is not currently before us. Therefore, we decline to speculate on its potential impact and reserve that discussion for the appropriate case.